No. 23-11065-H

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

DAVID ADAMS, GERALD KASMERE, and
MICHAEL SHAW, on behalf of themselves
and others similarly situated,

Plaintiffs-Appellants

*v.*

PALM BEACH COUNTY,

Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of Florida

## BRIEF OF APPELLANT

ROBERT S. NORELL
Fla. Bar No. 996777
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 N.W. 70th Avenue, Suite 305
Plantation, FL 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Counsel for Plaintiff-Appellant*

Adams et al. v. Palm Beach County, Case No. 21-13825-DD

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellant certifies that the following listed persons and entities as described in the Circuit Rule 26.1-1 have an interest in the outcome of this case:

1. Adams, David, Plaintiff/Appellant

2. Cure, Anaili M., Counsel for Defendant/Appellee

3. Friedman, Howard S., Counsel for Plaintiff/Appellant

4. Kasmere, Gerald, Plaintiff/Appellant

5. Norell, Robert S., Counsel for Plaintiff/Appellant

6. Palm Beach County, Defendant/Appellee

7. Palm Beach County Board of County Commissioners, governing Board of Palm Beach County, Defendant/Appellee

8. Quincy, Carey, Opt-In Plaintiff/Appellant

9. Reinhart, Bruce E., U.S. Magistrate Judge, S.D. Florida

10. Shaw, Michael, Plaintiff/Appellant

11. Steigman, Jeffrey, Opt-In Plaintiff/Appellant

12. Weaver, Shane. Counsel for Defendant/Appellee

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

*/s/ Robert S. Norell*

ROBERT S. NORELL
Attorney for Plaintiff-Appellant

# STATEMENT REGARDING ORAL ARGUMENT

The Appellants request oral argument. This appeal raises an issue of first impression in this circuit that is of substantial public importance. Oral argument may help the Court of Appeals analyze the law and policy considerations that control the outcome of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT.......................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT .............................................i

TABLE OF CONTENTS...........................................................................ii

TABLE OF AUTHORITIES......................................................................iv

JURISDICTIONAL STATEMENT..............................................................1

STATEMENT OF ISSUES…………….......................................................2

STATEMENT OF THE CASE...................................................................3

      A.     PROCEDURAL HISTORY..............................................3

      B.     STATEMENT OF FACTS................................................5

SUMMARY OF ARGUMENT....................................................................9

ARGUMENT.........................................................................................11

I.    The Failure to Pay Minimum Wage to a Municipality's Workers
    Violates the Fair Labor Standards Act when the Workers Perform
    Services at the Municipality's For-Profit Golf Course in Exchange for
    the Promise of In-Kind Compensation in the Form of Heavily
    Discounted Rounds of Golf Having a Potential Value of Hundreds of
    Dollars per Workweek

      A. STANDARD OF REVIEW................................................11

      B. INTRODUCTION ...........................................................13

      C. Public Employees Are Protected by the FLSA...........................14

    D. The Public Agency Volunteer Exception to the Definition of "Employee" Does Not Apply to Workers Who Receive In-Kind Benefits as Compensation for Their Work....................................15

    E. The County Violated the FLSA by Providing the Plaintiffs with Compensation, but not Minimum Wage, for Their Services........18

    F. The Plaintiffs' Expectations of Compensation Are Not Controlling Because They Were Promised and Received Compensation.......20

    G. The Plaintiffs Did Not Engage in Work that Is Traditionally Associated with Public Service Volunteerism.............................24

    H. The Record Does Not Permit the Conclusion that the Plaintiffs Were Given a "Reasonable Benefit" or a "Nominal Fee" as a Matter of "Economic Reality" Within the Meaning of 29 C.F.R. § 553.106.....................................................................................26

    I. Requiring the County to Pay Minimum Wage to the Plaintiffs Is Consistent with Policies Underlying the FLSA .........................45

II. The District Court Erred by Dismissing Fair Labor Standards Act Claims and a Florida Minimum Wage Act Claim Based on the Conclusion that Workers Who Provide Services for a Municipality in Exchange for In-Kind Compensation Are Not Employees of the Municipality ..............................................................................................48

CONCLUSION..................................................................................52

CERTIFICATE OF COMPLIANCE.................................................52

CERTIFICATE OF SERVICE............................................................53

# TABLE OF AUTHORITIES

**Cases**

Anderson v. River, 219 F. App'x 901 (11th Cir. 2007) _____24

Ashcroft v. Iqbal, 556 U.S. 662 (2009) _____12

Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728 (1981) _____ 22, 33, 47

Bartels v. Birmingham, 332 U.S. 126 (1947) _____33

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) _____ 12, 35, 49

Blandon v. Waste Pro United States, No. 6:19-cv-2420-Orl-78GJK, 2020 U.S. Dist. LEXIS 254312 (M.D. Fla. Apr. 30, 2020)_____45, 51

Brown v. N.Y.C. Dep't of Educ., 755 F.3d 154 (2d Cir. 2014) _____ 24, 34, 42

CBS Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217 (11th Cir. 2001) _____16

Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 (1984) _____23, 24

CP v. Leon County School Board Florida, 483 F.3d 1151 (11th Cir. 2007) _____11

Gray v. Powers, 673 F.3d 352 (5th Cir. 2012) _____34

Grossman v. Nationsbank, 225 F.3d 1229 (11th Cir. 2000) _____12

Haavistola v. Community Fire Co. of Rising Sun, 6 F.3d 211 (4th Cir. 1993) _____50

Harper v. Blockbuster Entm't Corp., 139 F.3d 1385 (11th Cir. 1998) _____11

In re Porto, 645 F.3d 1294 (11th Cir. 2011) _____24

Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854 (11th Cir. 2000) _____45

Krause v. Cherry Hill Fire Dist. 13, 969 F. Supp. 270 (D.N.J. 1997) _____33

Layton v. DHL Express (USA), Inc., 686 F.3d 1172 (11th Cir. 2012) _____34

McKay v. Miami-Dade Cnty., 36 F.4th 1128 (11th Cir. 2022) _____ 22, 23, 24,28

Mendel v. City of Gib., 727 F.3d 565 (6th Cir. 2013) _____38

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992) _____47

Okoro v. Pyramid 4 Aegis, No. 11-C-267, 2012 U.S. Dist. LEXIS 56277 (E.D. Wis. 2012) _____17

Owner-Operator Indep. Drivers v. Landstar, 541 F.3d 1278 (11th Cir. 2008) _____11

Piazza v. Nueterra Healthcare Physical Therapy, LLC, 719 F.3d 1253 (11th Cir. 2013) _____30

Pietras v. Board of Fire Commissioners, 180 F.3d 468 (2d Cir. 1999)_____49

Poder in Action v. City of Phx., No. CV-20-01429-PHX-DWL, 2020 U.S. Dist. LEXIS 154788 (D. Ariz. Aug. 26, 2020)_____17

Price v. Grasonville Volunteer Fire Dep't, No. ELH-14-1989 (D. Md. Dec. 29, 2014) _____50

Purdham v. Fairfax Cty. Sch. Bd., 637 F.3d 421 (4th Cir. 2011) _____ 32, 33, 41, 42

Rhea Lana, Inc. v. U.S. Dep't of Labor, 925 F.3d 521 (D.C. Cir. 2019) 18, 19, 36, 37

Rodriguez v. Township of Holiday Lakes, 866 F. Supp. 1012 (S.D. Tex. 1994) ___33

Salinas v. Commercial Interiors, Inc., 848 F.3d 125 (4th Cir. 2017) _____47

Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013)_____33, 34

Speaker v. United States HHS CDC & Prev'n, 623 F.3d 1371 (11th Cir. 2010) ____13

Tennessee Coal, Iron R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590 (1944) __47

Todaro v. Twp. of Union, 27 F. Supp. 2d 517 (D.N.J. 1998)_____33

Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290 (1985) __ 9, 17, 22, 48

West v. Warden, 869 F.3d 1289 (11th Cir. 2017) _____ 12, 19, 29


**Statutes**

215 _____3

26 U.S.C. § 132(c)(1)_____18, 38

28 U.S.C. § 1291 _____ 1

28 U.S.C. § 1331 _____ 1

28 U.S.C. § 1367 _____ 1

29 U.S.C. § 201 _____ 1

29 U.S.C. § 202 _____ 47

29 U.S.C. § 203(d) _____ 14

29 U.S.C. § 203(e) _____ 14

29 U.S.C. § 203(e)(1) _____ 14, 15

29 U.S.C. § 203(e)(4)(A) _____ 9, 13, 15, 45

29 U.S.C. § 203(e)(4)(A)(i) _____ 15, 27

29 U.S.C. § 203(e)(4)(A)(ii) _____ 15

29 U.S.C. § 203(g) _____ 14, 33

29 U.S.C. § 203(m) _____ 17

29 U.S.C. § 215 _____ 3

29 U.S.C. § 206 _____ 3, 9, 14, 20

29 U.S.C. § 216(b) _____ 1, 3

42 U.S.C. § 1395nn(h)(1)(A) _____ 17

42 U.S.C. § 1395nn(h)(1)(B) _____ 17

Florida Minimum Wage Act, Fla. Stat. § 448.110 _____ 1, 3

**Other Authorities**

2022 Employer Health Benefits Survey, KFF (Oct. 27, 2022),
    https://www.kff.org/report-section/ehbs-2022-section-1-cost-of-health-insurance/
    _____ 42

Cambridge Dictionary,
  https://dictionary.cambridge.org/us/dictionary/english/remuneration (last visited May 18, 2023) _____16

Merriam-Webster, https://www.merriam-webster.com/dictionary/ compensation (last visited May 18, 2023) _____16

Pub. L. 99–150, § 4(b) (1985)_____23, 27

The Law Dictionary, https://thelawdictionary.org/ compensation/ (last visited May 18, 2023) _____16

## Rules

Fed. R. Civ. P. 12(b)(6) _____3, 11

Fed. R. Civ. P. 8(a) _____12, 35

## Regulations

20 C.F.R. § 211.2(a) _____16

29 C.F.R. § 531.27(a) _____20, 40

29 C.F.R. § 552.100(b) _____17

29 C.F.R. § 553.1(c) _____15

29 C.F.R. § 553.101(a) _____ passim

29 C.F.R. § 553.101(b) _____46

29 C.F.R. § 553.104(b) _____ 13, 24, 25, 26, 46

29 C.F.R. § 553.106(a) _____28

29 C.F.R. § 553.106(d) _____ 10, 28, 43

29 C.F.R. § 553.106(e) _____40, 42

29 C.F.R. § 553.106(f)_____32, 33

29 C.F.R. § 553.3(a)(3) _____ 14

**Constitutional Provisions**

Fla. Const. Art. X § 24 _____ 1, 3

# JURISDICTIONAL STATEMENT

This appeal is from a final order dismissing a complaint for failure to state a claim entered in an action alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and the Florida Minimum Wage Act, Fla. Stat. § 448.110, and Fla. Const. Art. X §24. The district court had subject matter jurisdiction over the federal claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The district court had supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367. The district court entered an order dismissing with prejudice all claims asserted by the named plaintiffs. (Doc 64) The named plaintiffs appealed from that order. The Court of Appeals dismissed the appeal because the district court's order did not decide whether opt-in plaintiffs were similarly situated and therefore was not a final order. After remand, the district court entered an order that incorporated the earlier order and expressly dismissed the claims of all plaintiffs, including opt-in plaintiffs. (Doc. 73) That order is a final decision that disposed of all parties' claims. The court of appeals has jurisdiction pursuant to 28 U.S.C. § 1291.

The district court's final dismissal order was entered on March 7, 2023. No motions were filed that altered the deadline for filing a notice of appeal. The notice of appeal was timely filed on April 3, 2023.

## STATEMENT OF ISSUES

    1.    Does the failure to pay minimum wage to a municipality's workers violate the Fair Labor Standards Act when the workers perform services at the municipality's for-profit golf course in exchange for the promise of in-kind compensation in the form of heavily discounted rounds of golf having a potential value of hundreds of dollars per workweek?

    2.    Did the district court err by dismissing Fair Labor Standards Act claims and a Florida Minimum Wage Act claim based on the conclusion that workers who provide services for a municipality in exchange for heavily discounted rounds of golf are not employees of the municipality?

## STATEMENT OF THE CASE

### Procedural History

The Appellants are plaintiffs in a lawsuit filed in the United States District Court for the Southern District of Florida on January 22, 2021. (Doc. 1) The complaint alleged violations of the minimum wage and retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206, 215 ("FLSA"), and of the minimum wage provisions of the Florida Minimum Wage Act, Fla. Stat. § 448.110 and Fla. Const. Art. X § 24. The plaintiffs brought the federal claims as a collective action on their own behalf and on behalf of similarly situated persons pursuant to 29 U.S.C. § 216(b). They brought the state claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Doc. 1)

On February 9, 2021, the plaintiffs filed a motion to facilitate notice to the collective and class. (Doc. 6) That motion was pending when the court dismissed the complaint.

The defendant, Palm Beach County ("the County"), moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) on February 23, 2021. (Doc. 15) After the plaintiffs filed an amended complaint on March 17, 2021 (doc. 28), the district court denied the motion to dismiss as moot (doc. 29). Pursuant to consent of the parties, the case was

reassigned to Magistrate Judge Dave Lee Brannon on March 25, 2021. (Doc. 32) The County filed another motion to dismiss the complaint for failure to state a claim on March 25, 2021. (Doc. 33) On May 21, 2021, the case was reassigned to Magistrate Judge Bruce E. Reinhart after Magistrate Judge Brannon passed away. (Doc. 43) On July 22, 2021, the district court granted the dismissal motion and granted leave to amend the complaint. (Doc. 52)

The plaintiffs filed a second amended complaint on August 5, 2021. (Doc. 54) On August 30, 2021, the County moved to dismiss that complaint for failure to state a claim. (Doc. 59) The district court granted that motion with prejudice on October 4, 2021. (Doc. 64) The plaintiffs appealed from that order on November 1, 2021. (Doc. 65) The court of appeals dismissed the appeal on the ground that the district court's order did not decide whether opt-in plaintiffs were similarly situated and therefore was not final. Adams v. Palm Beach Cty., No. 21-13825 (11th Cir. Nov. 28, 2022). The County then moved to dismiss the remaining claims of the opt-in plaintiffs. (Doc. 71) The district court granted that motion over the plaintiffs' opposition on March 7, 2023. (Doc. 73) On April 3, 2023, the plaintiffs timely appealed that order of dismissal and the incorporated order dismissing the claims of the named plaintiffs. (Doc. 74)

## Statement of Facts

The Second Amended Complaint alleges the following facts that are relevant to this appeal.

The County operates four world-class for-profit golf courses in competition with private golf courses. (Doc. 54: ¶ 1) The County advertises for and hires workers to provide services at those golf courses, including work as bag drop attendants, course rangers, driving range attendants, starters' assistants, and tee times administrators. (Id. ¶ 28) Duties associated with those positions include greeting customers, carrying golf clubs to and from customers' cars, loading golf clubs into golf carts, cleaning customers' golf clubs and golf balls, cleaning and charging golf carts, furnishing customers with scorecards and pencils, retrieving carts from cart barns to assure their availability for customers, returning carts to cart barns for storage, assisting the starter, patrolling the range, raking sand traps, policing the pace of play, filling divots with sand and replenishing supplies of sand, picking up and disposing of trash, retrieving driving range balls, and washing driving range balls for customer use. (Id. ¶ 26)

The plaintiffs worked for the County in those positions and performed the described services. (Id. ¶ 25) Those positions and services are integral to the operation of the County's golf courses. (Id. ¶¶ 1, 25) The workers provide

services that enhance the value of the golfing experience. Their services are essential to attract customers and to maintain the reputation of the County's golf courses as premiere places to play golf. Golf course customers expect those services to be provided and factor in the availability of those services when they decide where to golf. (<u>Id</u>. ¶ 25) The services are vital and necessary to the operation of Defendant's golf facilities. (<u>Id</u>. ¶ 29)

The same services are provided by private golf courses that compete against the County for customers. (<u>Id</u>. ¶ 25) Private golf courses pay wages to the workers who perform those services. (<u>Id</u>.) The County classifies the workers it hires to perform those services as "volunteers" and does not pay them wages. (<u>Id</u>. ¶¶ 1, 27, 31-32) By classifying the workers as "volunteers," the County obtains free labor and gains a competitive advantage over private golf courses that must pay wages to workers who provide the same services. (<u>Id</u>. ¶ 33) If not for the County's classification of those workers as "volunteers," the County would have to hire and pay employees to perform the job duties of the unpaid "volunteers." (<u>Id</u>.)

While the plaintiffs were not paid wages, they were promised in-kind compensation for their work in the form of substantial discounts on rounds of golf. (<u>Id</u>. ¶ 33) In exchange for working 7 hours during a workweek, the plaintiffs were allowed to play an unlimited number of rounds of golf during

that week at a cost of $5 per round. (Id.) The typical charge for a round of golf at the County's golf courses is $96. (Id.) The $91 discount therefore gave the plaintiffs a substantial economic benefit. (Id.) For example, a worker who completed 7 hours of work and played five rounds of golf during the week would receive discounts with a value of $455. (Id.)

The named plaintiffs all worked at the Osprey Point Golf Club, one of the County's for-profit golf courses, performing the jobs of bag drop attendants, course rangers, driving range attendants, and starters' assistants. (Id. ¶¶ 13, 17, 21) They performed work at the direction and for the benefit of the County and performed such duties as they were assigned by management. (Id. ¶¶ 13, 17, 21) They were not allowed to choose the specified duties for which they allegedly "volunteered." (Id. ¶¶ 14, 18, 22) They were required to follow strict rules in the performance of their duties (Id. ¶¶ 14, 18, 22) The County defined the number of hours the plaintiffs were required to work before they earned in-kind compensation in the form of discounted rounds of golf. (Id. ¶¶ 15, 19, 23) The County trained the plaintiffs. (Id. ¶¶ 17, 21). The County also maintained records of the hours the plaintiffs worked. (Id. ¶ 46). None of the plaintiffs were paid wages. (Id. ¶¶ 14, 18, 22) However, they were all promised and received discounts on rounds of golf. (Id. ¶¶ 15-16, 19-20, 23-24)

Plaintiff Kasmere complained to the County that he was not being paid wages. (<u>Id</u>. ¶ 90) Immediately after he objected to not being paid wages, the golf course manager told him he would not be allowed to return to work as no positions were available. (<u>Id</u>. ¶ 91) That statement was untrue (positions were, in fact, available) and was made as a pretextual explanation to conceal the manager's intent to retaliate against Kasmere for complaining that he was not being paid wages as the law required. (<u>Id</u>. ¶¶ 92-93)

## SUMMARY OF ARGUMENT

The FLSA requires employers to pay a minimum wage to their employees. 29 U.S.C. § 206. "Employees" of public agencies do not include volunteers who work for a civic, charitable, or humanitarian purpose unless they receive "compensation," a term that does not include reasonable benefits or nominal fees. 29 U.S.C. § 203(e)(4)(A); 29 C.F.R. § 553.101(a). Workers who earn compensation for their labor are not volunteers. See 29 U.S.C. § 203(e)(4)(A) (volunteer exception only applies if a worker "receives no compensation").

Palm Beach County hired the plaintiffs to provide services to the customers of its for-profit golf courses. To gain a competitive advantage over competing private golf courses, the County misclassified the plaintiffs as volunteers rather than employees. The County paid the plaintiffs no wages but promised them in-kind compensation in the form of discounts on rounds of golf with a potential value of hundreds of dollars per workweek. The plaintiffs were required to work a threshold number of hours to earn that in-kind compensation. Because the exchange of in-kind benefits for services constitutes "wages in another form," Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 301 (1985), the plaintiffs worked for compensation and could not lawfully be classified as volunteers.

The compensation was not a "reasonable benefit" because heavily discounted rounds of golf are not "commonly or traditionally provided to volunteers of State and local government agencies." 29 C.F.R. § 553.106(d). The compensation was not a "nominal fee" because the plaintiffs were never paid a fee and because the economic value of the promised discounts on unlimited rounds of golf was substantially greater than minimum wage.

The district court erred by dismissing the Second Amended Complaint for failure to state a claim. The plaintiffs alleged sufficient facts to state a plausible claim that they were employees of the County rather than volunteers. As employees, they were entitled to minimum wage under federal and state law and were protected from retaliation. To the extent that more facts are required to determine whether the plaintiffs were employees because they received compensation, the asserted claims should be decided at trial or on summary judgment after a full factual record has been developed. Because the district court erred as a matter of law in concluding at this early stage of the case, without the benefit of discovery, that the plaintiffs would be unable to prove that they were employees, the dismissal order should be reversed.

# ARGUMENT

**I.** **The Failure to Pay Minimum Wage to a Municipality's Workers Violates the Fair Labor Standards Act when the Workers Perform Services at the Municipality's For-Profit Golf Course in Exchange for the Promise of In-Kind Compensation in the Form of Heavily Discounted Rounds of Golf Having a Potential Value of Hundreds of Dollars per Workweek**

## A. Standard of Review

This appeal raises questions concerning the interpretation of the Fair Labor Standards Act ("FLSA") and administrative regulations implementing that law. The interpretation of a federal statute presents a question of law that is reviewed de novo. CP v. Leon County School Board Florida, 483 F.3d 1151, 1156 (11th Cir. 2007). The district court's interpretation of federal regulations is also reviewed de novo. Owner-Operator Indep. Drivers v. Landstar, 541 F.3d 1278, 1291 (11th Cir. 2008).

The court of appeals applies the same legal standard that the trial court must apply when it reviews the dismissal of a complaint for failure to state a claim. Accordingly, review of the trial court's decision is de novo. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

To determine whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), the court limits its consideration to facts alleged within the four corners of the complaint. Grossman v. Nationsbank, 225 F.3d 1229, 1231

(11th Cir. 2000). The court accepts those facts as true and draws all reasonable inferences in the plaintiff's favor. <u>West v. Warden</u>, 869 F.3d 1289, 1296 (11th Cir. 2017). The motion must be denied if the complaint contains "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Since a plaintiff's obligation is merely to plead "a short and plain statement of claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), a complaint "does not need detailed factual allegations." <u>Twombly</u>, 550 U.S. at 555. Rather, the factual allegations need only be sufficient "to raise a right to relief above the speculative level." <u>Id</u>.

The standard articulated in <u>Twombly</u> "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the claim. <u>Id</u>. at 556. The grounds for the claim must be plausible, but that requirement "does not impose a probability requirement at the pleading stage." <u>Id</u>. Even unlikely or improbable claims should not be dismissed before discovery, provided that they are plausible. <u>Id</u>. A plaintiff "need not prove his case on the pleadings" but "must merely provide enough factual material to raise a

reasonable inference, and thus a plausible claim," of wrongdoing. <u>Speaker v. United States HHS CDC & Prev'n</u>, 623 F.3d 1371, 1386 (11th Cir. 2010).

## B.    Introduction

The County competes against private golf courses for customers who want to enjoy a world-class golfing experience. However, the County gains a competitive advantage over private courses by misclassifying certain employees as "volunteers." The County can operate its for-profit business at a reduced cost by failing to pay minimum wage that private golf courses must pay to workers who provide the same services.

The County relies upon the public service volunteer exception to the FLSA, 29 U.S.C. § 203(e)(4)(A), to justify its failure to pay minimum wage to its employees. Congress intended the public service volunteer exception to apply to volunteer firefighters, people who help the infirm in public hospitals, public school coaches, and other civic-minded individuals who provide humanitarian or charitable acts without any promise of compensation. 29 C.F.R. § 553.104(b). Congress did not intend to extend the volunteer exception to compensated laborers who serve customers at a for-profit golf course that competes with private golf courses for customers. Laborers who help a for-profit business gain a competitive advantage are not performing the kind of public service that distinguishes a volunteer from an employee.

The County induces workers to provide manual labor on its golf courses by promising them compensation in the form of discounts on rounds of golf that have a substantial economic value. Because the golf course workers receive in-kind compensation, they cannot be classified as volunteers. The County's misclassification of its employees as volunteers benefits the County's for-profit business by giving it an advantage that its competitors lack while depriving its workers of a minimum wage in violation of the FLSA. The County's misclassification of for-profit business workers as volunteers is not permitted by the public service volunteer exception to the Act.

**C.     Public Employees Are Protected by the FLSA**

The FLSA requires employers to pay a minimum wage to their employees. 29 U.S.C. § 206. Subject to limited exceptions, any worker who is employed by an employer is an "employee" within the meaning of the FLSA. 29 U.S.C. § 203(e)(1). To "employ" means "to suffer or permit to work." Id. § 203(g). Public agencies are included within the statutory definition of the term "employer." Id. § 203(d). An individual employed by a public agency includes "any individual employed by a . . . political subdivision of a State." Id. § 203(e). The FLSA's coverage extends to "virtually all" state and local employees. 29 C.F.R. § 553.3(a)(3).

The County is a public agency. (Doc. 54: ¶ 6) <u>See</u> 29 C.F.R. § 553.1(c) ("public agency" includes a political subdivision of a state). It is therefore an employer of workers it suffers or permits to work, subject to specified statutory exceptions. <u>See</u> 29 U.S.C. § 203(e)(1) (excepting the provisions of subparagraphs (2), (3), and (4) from the definition of "employee"). The exception upon which this appeals turns addresses public agency volunteers. <u>Id</u>. § 203(e)(4)(A).

**D.** **The Public Agency Volunteer Exception to the Definition of "Employee" Does Not Apply to Workers Who Receive In-Kind Benefits as Compensation for Their Work**

A worker is not an employee if the individual "volunteers to perform services for a public agency," 29 U.S.C. § 203(e)(4)(A), and "receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered,"[1] <u>id</u>. § 203(e)(4)(A)(i). The Department of Labor promulgated regulations to implement the public agency volunteer exception. Those regulations include a definition of "volunteer," a term the statute does not define. In relevant part, that definition states that a volunteer is a person who "performs hours of

---

[1] In addition, the exception applies only to volunteers who are not performing "the same type of services which the individual is employed to perform for such public agency." 29 U.S.C. § 203(e)(4)(A)(ii)

service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered." 29 C.F.R. § 553.101(a) (emphasis added).

While Congress did not define the term "compensation," its decision to use that term rather than the term "wages" suggests no limitation in the kind of compensation that distinguishes a volunteer from an employee. When words in a statute are not defined, they are given their ordinary meaning as the words are commonly used. CBS Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001). "Compensation" for work is not synonymous with wages or salary but more broadly includes "remuneration" for services performed.[2] "Remuneration" means "payment for work or services."[3]

Congress and administrative agencies have long recognized that compensation is not limited to wages. "Compensation may be paid as money, a commodity, a service or a privilege." 20 C.F.R. § 211.2(a). Under the Stark Law, for example, a "compensation arrangement" is an arrangement involving

---

[2] What Is Compensation?, The Law Dictionary, https://thelawdictionary.org/compensation/ (last visited May 18, 2023). The Law Dictionary is an online version of Black's Law Dictionary. Compensation is also defined as "remuneration" by Meriam-Webster. Compensation, Merriam-Webster, https://www.merriam-webster.com/dictionary/ compensation (last visited May 18, 2023).

[3] Remuneration, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/remuneration (last visited May 18, 2023).

"any remuneration," 42 U.S.C. § 1395nn(h)(1)(A), and "remuneration" is defined as "any remuneration, directly or indirectly, overtly or covertly, in cash or in kind," id. § 1395nn(h)(1)(B). Congress has thus recognized in-kind remuneration as a form of compensation.

A payment for services with in-kind benefits constitutes compensation for those services. In-kind benefits are a payment in goods or services rather than money. Poder in Action v. City of Phx., No. CV-20-01429-PHX-DWL, 2020 U.S. Dist. LEXIS 154788, at *27 (D. Ariz. Aug. 26, 2020). As the court recognized in Okoro v. Pyramid 4 Aegis, No. 11-C-267, 2012 U.S. Dist. LEXIS 56277, at *13 (E.D. Wis. 2012), "work constitutes employment when there is an expectation of in-kind benefits in exchange for services." In-kind benefits are "wages in another form." Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 301 (1985). "[T]he fact that the compensation [is] received primarily in the form of benefits rather than cash is in [the FLSA] context immaterial." Id.

Employers routinely compensate employees with benefits that do not take the form of cash. The use of a company car or a luxury box in a sporting arena is often part of an executive compensation package. The FLSA recognizes that employers commonly compensate their employees with food, lodging, and dry cleaning. 29 U.S.C. § 203(m); 29 C.F.R. § 552.100(b).

Importantly, the Internal Revenue Service taxes employee discounts as compensation when the discount exceeds 20% of the price charged to customers. 26 U.S.C. § 132(c)(1). A $91 discount on a $96 round of golf is not only in-kind compensation for work performed but taxable income under federal law.

Nor must an in-kind benefit have a particular economic value to qualify as compensation. In Rhea Lana, Inc. v. U.S. Dep't of Labor, 925 F.3d 521, 523 (D.C. Cir. 2019), consignors who worked at consignment sales performing "everyday tasks like organizing merchandise, removing tags from clothing, and processing customers' purchases at the point of sale" were promised in-kind compensation in the form of "the opportunity to shop before the general public." The Court of Appeals agreed with the Department of Labor that the consignors were not volunteers but were employees of the consignment shop when they performed work with the "expectation of in-kind compensation." Rhea Lana, 925 F.3d at 527.

E.  **The County Violated the FLSA by Providing the Plaintiffs with Compensation, but not Minimum Wage, for Their Services**

The Supreme Court's recognition in Alamo Foundation that in-kind benefits are a form of wages and that the FLSA makes no material distinction between compensation paid as cash or as in-kind benefits underscores the error

in the district court's dismissal of this action. The Second Amended Complaint alleges that the plaintiffs were promised and received in-kind benefits as compensation for their work (Doc. 54: ¶¶ 15, 19, 23, 33) Since that allegation of fact must be accepted as true at this stage of the litigation, West v. Warden, 869 F.3d 1289, 1296 (11th Cir. 2017), the Second Amended Complaint states a plausible claim that the plaintiffs were employees rather than volunteers. The promise or receipt of compensation is inconsistent with volunteer status. 29 C.F.R. § 553.101(a). See also Rhea Lana, 925 F.3d at 523 (promise of in-kind compensation made it unlawful for private employer to classify workers as volunteers).

Rounds of golf at the County's golf courses have substantial economic value. As the Second Amended Complaint explains by way of example, the County typically charges customers $96 for a round of golf at Osprey Golf Course. Workers who provided services for at least one 7-hour shift during a workweek were entitled to a valuable discount. They paid only $5 per round for unlimited rounds of golf during that workweek, resulting in an economic benefit to the worker of $91 per round. (Doc. 54: ¶¶ 15, 19, 23, 33) "A worker who was an avid golfer could work one shift during a workweek and then play five or more discounted rounds during the remainder of the week, earning

compensation that had an economic benefit of at least $455 in that week." (Id. ¶ 33)

Each Named Plaintiff made frequent use of that discount. Adams received discounted rounds of golf on approximately 31 occasions, Shaw on approximately 43 occasions, and Kasmere on approximately 95 occasions. Each Named Plaintiff saved thousands of dollars in golf fees because of the discounts they received in exchange for their work.  (Id. ¶¶ 16, 20, 24) Labeling the workers as "volunteers" does not change the economic reality that they are working for in-kind compensation and are therefore employees.

The Second Amended Complaint alleges that the County failed to pay minimum wage to the plaintiffs. (Doc. 54: ¶¶ 14, 18, 22, 32, 40) Since the plaintiffs were employees rather than volunteers, the County violated the FLSA by failing to pay them minimum wage in cash for their services. See 29 U.S.C. § 206 (requiring employers to pay minimum wage to employees); 29 C.F.R. § 531.27(a) (requiring minimum wage to be paid in cash or its equivalent).

**F. The Plaintiffs' Expectations of Compensation Are Not Controlling Because They Were Promised and Received Compensation**

Rather than allowing the plaintiffs to proceed with discovery after they alleged a plausible violation of the FLSA, the district court concluded that the

Second Amended Complaint failed to make a plausible claim that the plaintiffs were employees rather than volunteers. The district court began its analysis by concluding that if the plaintiffs "subjectively believed that they should be paid for their services, that belief would not be objectively reasonable." (Doc. 64 at 9) Yet the Second Amended Complaint does not allege that the plaintiffs believed they would be paid wages. As the argument below demonstrates, whether they expected a wage payment is not relevant to the County's requirement to comply with the FLSA.

After attributing a belief to the plaintiffs that they did not allege, the court concluded that the plaintiffs did not have "an objectively reasonable expectation of wages or the equivalent." (Doc. 64 at 9) The court held that "it is not objectively reasonable to expect wages when you sign up for a position advertised for volunteers" and concluded that the "only objectively reasonable conclusion from those facts is that you have accepted a volunteer position that pays no wages." (Doc. 64 at 9-10) The court suggested that the plaintiffs' "argument to the contrary borders on frivolous." (Doc. 64 at 10) Yet that is not the argument that the plaintiffs made.[4] Their claim is that they were promised

---

[4] The district court was apparently responding to the County's mischaracterization of the plaintiffs' argument, but the straw man that the court knocked down does not represent the plaintiffs' position. The plaintiffs have never claimed that they expected to be paid wages. Their claim is based

and received in-kind compensation for their work and were therefore misclassified as volunteers.

Whether an employee is protected by the FLSA does not hinge on the employee's expectations. Even when an employee does not expect or desire to be paid wages, an employer has an obligation to pay minimum wage. See Tony & Susan Alamo Found., 471 U.S. 290, 302 (1985) ("the purposes of the [FLSA] require that it be applied even to those who would decline its protections"); Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728, 740 (1981) (employees may not waive protections of FLSA). The employees in Alamo Foundation considered themselves to be volunteers and did not want to be paid for the work they did. Tony & Susan Alamo Found., 471 U.S. at 293. The Supreme Court accepted the testimony that "no one ever expected any kind of compensation." Id. at 301. The Court nevertheless concluded that that the workers were not volunteers because they received in-kind benefits — "wages in another form" — in exchange for their work. Id. See also McKay v. Miami-Dade Cnty., 36 F.4th 1128, 1137 (11th Cir. 2022) (rejecting argument that "any individual who works for a public agency without payment [is] a volunteer under the FLSA" as inconsistent with the Act's purposes).

---

on their legal entitlement to minimum wage, not on whether they expected the County to comply with the FLSA.

While <u>Alamo Foundation</u> addressed private employment, the limited relevance of a worker's expectations is even more clear with regard to the public agency volunteer exception because binding regulations define the term "volunteer." Whether or not a worker <u>expected</u> compensation for services, if the worker was <u>promised</u> or <u>received</u> compensation for those services, the worker cannot be classified as a volunteer. <u>See</u> 29 C.F.R. § 553.101(a) (defining "volunteer" as an individual who provides services "without promise, expectation or receipt of compensation for services rendered"). The Second Amended Complaint alleges that the plaintiffs were promised and actually received in-kind compensation in the form of valuable discounts for rounds of golf. (Doc. 54: ¶¶ 33, 34) Section 553.101(a) makes the promise of compensation alone sufficient to remove the plaintiffs from the definition of "volunteer," whether or not they had a reasonable expectation of being compensated.

Since Congress delegated the task of defining "volunteer" to the Department of Labor,[5] its definition is entitled to <u>Chevron</u> deference.[6] <u>McKay</u>,

---

[5] <u>See</u> Pub. L. 99–150, § 4(b) (1985) (directing Secretary of Labor to issue regulations to implement the public agency volunteer exception); <u>McKay</u>, 36 F.4th at 1137 (citing S. Rep. No. 99–159, at 14 (1985)).

[6] The <u>Chevron</u> decision requires a court to give the highest degree of deference to regulations adopted pursuant to a congressional delegation of authority unless the regulations are "arbitrary, capricious, or manifestly contrary to the statute." <u>Chevron U.S.A. Inc. v. NRDC</u>, 467 U.S. 837, 843-44 (1984). The

36 F.4th at 1138; <u>Brown v. N.Y.C. Dep't of Educ.</u>, 755 F.3d 154, 161 n.4 (2d Cir. 2014). The district court gave no attention to the regulatory definition of "volunteer" as someone who was promised or received compensation. By focusing its attention on the reasonableness of the workers' expectations, the district court failed to apply the full regulatory definition of "volunteer." The court committed an error of law by relying on an incomplete understanding of the controlling legal standard. <u>See</u> <u>In re Porto</u>, 645 F.3d 1294, 1303 (11th Cir. 2011) (district court errs by applying "the wrong legal standard"); <u>Anderson v. River</u>, 219 F. App'x 901, 903 (11th Cir. 2007) (characterizing use of "the wrong legal standard" as an "error of law").

### G. The Plaintiffs Did Not Engage in Work that Is Traditionally Associated with Public Service Volunteerism

The district court also erred by concluding, without explanation, that "working as a ranger or cart attendant at a public golf course is akin to other positions that are amenable to volunteerism." (Doc. 64 at 9) The court cited 29 C.F.R. § 553.104(b) in support of that conclusion. That regulation provides:

> Examples of services which might be performed on a volunteer basis when so motivated include helping out in a sheltered workshop or providing personal services to the sick or the elderly in hospitals or nursing homes; assisting in a school library or cafeteria; or driving a school bus to carry a football team or band

Supreme Court characterized this degree of deference as "controlling." <u>Id</u>. at 844.

on a trip. Similarly, individuals may volunteer as firefighters or auxiliary police, or volunteer to perform such tasks as working with retarded or handicapped children or disadvantaged youth, helping in youth programs as camp counselors, soliciting contributions or participating in civic or charitable benefit programs and volunteering other services needed to carry out charitable or educational programs.

29 C.F.R. § 553.104(b).

The plaintiffs provided a variety of services to customers of the golf course, including

greeting customers, carrying golf clubs to and from customers' cars, loading golf clubs into golf carts, cleaning customers' golf clubs and golf balls, cleaning and charging golf carts, furnishing customers with scorecards and pencils, cleaning golf carts, retrieving carts from cart barns to assure their availability for customers, returning carts to cart barns for storage, assisting the starter, patrolling the range, raking sand traps, policing the pace of play, filling divots with sand and replenishing supplies of sand, picking up and disposing of trash, retrieving driving range balls, and washing golf range balls for customer use.

(Doc. 54: ¶ 26) Those are services commonly provided to customers of private golf courses by golf course employees. (Doc. 54: ¶ 25) Those services enhance the customer's experience and thus make customers more likely to purchase rounds of golf from courses that provide them. (Id.) Providing amenities that make a for-profit golf course more attractive to customers shares nothing in common with volunteer work that assists the needy or improves a community.

Public service volunteers provide services "for civic, charitable, or humanitarian reasons." 29 C.F.R. § 553.101(a). The activities listed in § 553.104(b) — assisting the sick and elderly, helping a school carry out its educational mission, and putting out fires — are traditionally associated with humanitarian, charitable, or civic purposes: educating children, instilling good sportsmanship and respect for rules through coaching, protecting the community, helping the sick and disabled, and providing for the least fortunate members of society. Those activities are qualitatively different from providing healthy adult golfers with golf carts and pencils. The plaintiffs did not work to improve their community or the lives of its residents. Their work made the County's for-profit enterprise more attractive to customers and thus more profitable, but increasing the profitability of a for-profit business does not reflect humanitarian or charitable motives. Instead, the plaintiffs worked to obtain discounts on unlimited rounds of golf and to have the chance to earn tips. (Doc. 54: ¶¶ 15, 19, 23) The district court's unexplained conclusion that the plaintiffs provided services that are "akin to" helping the sick and elderly is untenable.

**H.      The Record Does Not Permit the Conclusion that the Plaintiffs Were Given a "Reasonable Benefit" or a "Nominal Fee" as a Matter of "Economic Reality" Within the Meaning of 29 C.F.R. § 553.106**

A public agency may only classify a worker as a volunteer if the worker "receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered." 29 U.S.C. § 203(e)(4)(A)(i). The district court concluded that "the ability to play golf at a reduced fee was a reasonable benefit that was consistent with the economic realities of the particular situation." (Doc. 64 at 10) Although the court did not find that the plaintiffs received a "nominal fee" (the complaint does not allege that they were not paid a fee in any amount[7]), the court apparently regarded the value of the golf discounts as nominal. (Id. at 12-13) The facts alleged in the complaint — the only relevant facts in the record — do not support those conclusions.

Congress did not define the term "reasonable benefit." It left the implementation of the public agency volunteer exception to the Department of Labor. See Pub. L. 99–150, § 4(b) (1985) (directing Sec'y of Labor to issue

---

[7] As this brief argues below, the value of the benefit promised to the plaintiffs is much greater than the stipend paid to the coach in Purdham v. Fairfax Cty. Sch. Bd., 637 F.3d 421, 434 (4th Cir. 2011). Purdham is also distinguishable because a stipend is a form of a fee. See 29 C.F.R. § 553.106(e) (volunteers may receive a nominal "stipend or fee" without losing volunteer status). The common definition of "fee" is "a fixed price charged for a specific service." What Is a Fee?, Investopedia (updated Feb. 18, 2023), https://www.investopedia.com/terms/f/fee.asp. Discounts on golf rounds are a benefit but cannot reasonably be regarded as a "fee." The Second Amended Complaint did not allege, and the district court did not find, that the plaintiffs were paid a fee for their services.

regulations to implement the public agency volunteer exception). The Department promulgated a regulatory definition of the phrase "reasonable benefit." 29 C.F.R. § 553.106(a). While the district court apparently attached little weight to the language of that regulation because the regulatory language does not appear in the statute (doc. 64 at 10), the regulation was adopted pursuant to a legislative grant of authority and is therefore entitled to <u>Chevron</u> deference. <u>McKay v. Miami-Dade Cnty.</u>, 36 F.4th 1128, 1138 (11th Cir. 2022). The district court erred when it failed to acknowledge or apply the <u>Chevron</u> deference standard and gave the regulatory definition no deference at all.

### 1. <u>Reasonable Benefits Are Defined in 29 C.F.R. § 553.106(d)</u>

In relevant part, the regulation governing "reasonable benefits" states:

> Individuals do not lose their volunteer status if they are provided reasonable benefits by a public agency for whom they perform volunteer services. Benefits would be considered reasonable, for example, when they involve inclusion of individual volunteers in group insurance plans (such as liability, health, life, disability, workers' compensation) or pension plans or "length of service" awards, commonly or traditionally provided to volunteers of State and local government agencies, which meet the additional test in paragraph (f) of this section.

29 C.F.R. § 553.106(d). By its plain terms, the regulation defines benefits as reasonable if they are "commonly or traditionally provided to volunteers of State and local government agencies." No evidence in the record suggests that

discounted golf is a benefit that public agencies — across the nation or even just in Florida — "commonly or traditionally" provide to volunteers. No evidence even suggests that the County commonly or traditionally provides golf discounts to volunteers who do not work on golf courses for its Parks and Recreation Department. The Second Amended Complaint alleges that discounted golf is not a benefit commonly or traditionally provided to volunteers. (Doc. 54: ¶ 35) That allegation of fact must be accepted as true at this stage of the litigation. West, 869 F.3d at 1296. The County has never suggested that it will be able to produce evidence that public service volunteers who provide services to "State and local government agencies" are "commonly or traditionally" compensated with discounted rounds of golf.[8]

The district court avoided the plain meaning of the regulation by reading the words "for example" to mean that benefits "commonly or traditionally provided" are "examples" of reasonable benefits. That strained reading of the regulation deprives it of any meaningful standard to determine whether a benefit is reasonable. It is more natural to read the regulation as giving three examples of reasonable benefits (group insurance plans, pension plans, and

---

[8] Notably, the regulation does not refer to the particular agency providing the benefit but refers in the plural to "State and local government agencies." The question is what is common and traditional among all the nation's state and local governments, not what is common in a single department of Palm Beach County government.

"length of service" awards) and then articulating the standard that makes them reasonable: they are "commonly and traditionally provided to volunteers of State and local government agencies." Other examples of employment benefits might also be reasonable if they meet the regulatory standard by being "commonly or traditionally" provided to volunteers. It makes little sense to believe that the Department implemented a regulatory definition of "reasonable benefits" that offers no standard for public agencies to determine whether a benefit is or is not compensation.

Even if it made sense to read the "commonly or traditionally provided" language as an "example" of reasonableness rather than a legal test, the associated words doctrine (*noscitur a sociis*) requires terms that are grouped together to be given a related meaning. Piazza v. Nueterra Healthcare Physical Therapy, LLC, 719 F.3d 1253, 1263 n.4 (11th Cir. 2013). The Department's examples of reasonable benefits have a related meaning: they are all employment benefits. The Department offered no example of a reasonable benefit that is not commonly and traditionally given to employees as part of their compensation. The Department plainly intended "reasonable benefits" to encompass only benefits that are commonly and traditionally associated with employment.

The district court effectively disregarded the plain language of section 553.106(d) except for its concluding phrase that, in addition to meeting the test promulgated in paragraph (d), the benefit must "meet the additional test in paragraph (f) of this section." The court decided that paragraph (f) is the "ultimate touchstone" of the regulation (doc. 64 at 11), but the regulatory language makes clear that paragraph (f) is an "additional test," not an "ultimate touchstone." The district court interpreted the regulation as if paragraph (f) were the <u>only</u> test rather than an <u>additional</u> test. Yet paragraph (f) cannot be an additional test unless paragraph (d) is also a test. The only test stated in paragraph (d) is the requirement that a benefit must be "commonly and traditionally provided to volunteers" to be regarded as reasonable. If that language is disregarded, paragraph (d) states no test of reasonableness at all.

The Second Amended Complaint states a plausible claim that discounted rounds of golf with a potential value of hundreds of dollars per week are not commonly and traditionally provided to public service volunteers and are therefore not a reasonable benefit. In the absence of discovery or any record evidence suggesting that golf discounts are commonly and traditionally given to public service volunteers, the discounts cannot be deemed a reasonable benefit at this stage of the proceeding. It is therefore unnecessary to

decide whether the discounts satisfy the "additional test" stated in paragraph (f).

> 2. <u>The record does not support the conclusion that golf discounts are not compensation as a matter of economic reality</u>

The district court's reliance on 29 C.F.R. § 553.106(f) as the "ultimate touchstone" was premature in the absence of discovery. That regulation states:

> Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation.

29 C.F.R. § 553.106(f). It is not clear how the Department intended the "economic realities of the particular situation" to be determined. The "economic realities" language "is derived from the 'economic realities test' that has been used in determining whether an individual is an employee or an independent contractor." <u>Purdham v. Fairfax Cty. Sch. Bd.</u>, 637 F.3d 421, 433 (4th Cir. 2011). The "economic realities" test helps courts decide whether a worker is in business for himself or is dependent upon another person for his livelihood.[9] <u>Id</u>. In that context, "employees are those who as a matter of

---

[9] Outside the context of separating independent contractors from employees, economic dependence is not a reliable test of whether a worker is an employee. Workers who have a healthy retirement income and who continue working to feel useful, spouses who work to avoid boredom despite the breadwinner's

economic reality are dependent upon the business to which they render service." Bartels v. Birmingham, 332 U.S. 126, 130 (1947). See Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1312 (11th Cir. 2013) ("Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others'."). "The economic realities test 'presupposes a real economic exchange between the parties,' and therefore is not as useful when attempting to distinguish volunteers from employees, where 'there is no economic relation to measure'." Todaro v. Twp. of Union, 27 F. Supp. 2d 517, 534 (D.N.J. 1998) (quoting Rodriguez v. Township of Holiday Lakes, 866 F. Supp. 1012, 1020 (S.D. Tex. 1994)). Accordingly, "the economic realities test 'is of limited utility in determining whether an individual is an "employee," as opposed to a "volunteer".'" Purdham, 637 F.3d at 433 (quoting Krause v. Cherry Hill Fire Dist. 13, 969 F. Supp. 270, 274-75 (D.N.J. 1997)).

In the context of 29 C.F.R. § 553.106(f), the economic reality analysis focuses on the "total amount of payments." Accordingly, the test is whether

---

healthy income, and trust fund recipients who have no need for wages but work for nonprofits because they want help society are nevertheless employees who are subject to the FLSA. They are suffered or permitted to work, 29 U.S.C. § 203(g), and the FLSA does not allow them to forego wages for their work. See Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728, 740 (1981) (employees may not waive protections of FLSA).

the benefit was so minimal that it cannot be regarded as compensating the worker for work. Brown v. N.Y.C. Dep't of Educ., 755 F.3d 154, 168 (2d Cir. 2014). If the value was "more than nominal," the benefit "is appropriately deemed compensation, precluding a volunteer determination." Id. Since the plaintiffs earned the benefit of discounted rounds of golf by working a threshold number of hours, and since the promised benefit had more than nominal value, the discounts were compensation as section 106(f) defines economic reality.

In other contexts, the economic realities test generally asks "whether the alleged employer: '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records'." Gray v. Powers, 673 F.3d 352, 355 (5th Cir. 2012) (citation omitted).[10] The test also considers "the extent to which the service rendered is an integral part of the alleged employer's business." Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1312 (11th Cir. 2013). To the

---

[10] The Eleventh Circuit has adopted additional elements of the economic reality test when the question is whether two potential employers are joint employers, including ownership of the facilities, the performance of a specialty job, and investment in equipment. Layton v. DHL Express (USA), Inc., 686 F.3d 1172, 1176 (11th Cir. 2012). This is not a joint employer case and those factors are not relevant here.

extent that the test is relevant, the Second Amended Complaint alleges facts to make a plausible showing that the plaintiffs are employees as a matter of economic reality. The plaintiffs alleged that: the County selected and hired workers that it classifies as "volunteers" by advertising positions and soliciting applications (Doc. 54: ¶ 28); the plaintiffs performed work at the direction and for the benefit of the County and performed such duties as they were assigned by management (id.: ¶¶ 13, 17, 21); the plaintiffs were not allowed to choose the specified duties for which they allegedly "volunteered" (id.: ¶¶ 14, 18, 22); the plaintiffs were required to follow strict rules in the performance of their duties[11] (id. ¶¶ 14, 18, 22); the County defined the number of hours the plaintiffs were required to work before they earned in-kind compensation in the form of discounted rounds of golf (id.: ¶¶ 15, 19, 23); the County trained the plaintiffs (id.: ¶¶ 17, 21); and the County maintained records of the hours the plaintiffs worked (id. ¶ 46). The plaintiffs also alleged that they performed services that are "integral to the operation of [the County's] golf courses

---

[11] While this is undeniably an allegation of fact, the district court disregarded it because the plaintiffs cited only one work rule (plaintiffs were not allowed to sit) by way of example. (Doc. 64 at 13) The plaintiffs must plead "a short and plain statement of claim," Fed. R. Civ. P. 8(a), not their entire body of evidence. A complaint "does not need detailed factual allegations." Twombly, 550 U.S. at 555. While the Second Amended Complaint is more than sufficient to state a plausible claim, the plaintiffs should be given leave to amend if the dismissal really rests on giving one example of a strict work rule rather than listing all their work rules.

because their services "enhance the value of the golfing experience" and "are essential to attract customers and to maintain the reputation of a golf course as a premiere place to play golf. Golf course customers expect those services to be provided and factor in the availability of those services when they decide where to golf." (Id. ¶ 25) Those allegations are more than sufficient to make a plausible showing that the County employed the plaintiffs if the economic realities test is the litmus test of employment.

In a similar case involving private employment, the Court of Appeals for the D.C. Circuit found that workers classified as volunteers were employees as a matter of economic reality because they received in-kind compensation for their work, the performance of their work was controlled by the employer, the work benefitted the employer's sales operations, and the service of customers was integral to the employer's business. Rhea Lana, Inc. v. U.S. Dep't of Labor, 925 F.3d 521, 527 (D.C. Cir. 2019). The allegations of the Second Amended Complaint establish that the plaintiffs provide services that golfers expect from high-end golf courses (including competing golf courses in the private market) and are therefore integral to the County's business of operating world class golf courses. (Doc. 54: ¶ 25) Since the County provides the workers with in-kind compensation and controls the performance of their work, the

court's application of the "economic realities" test in <u>Rhea Lana</u> is inconsistent with the district court's conclusion that the plaintiffs are not employees.

The district court seemed to equate "economic reality" with "cost to the County." The discounts could be furnished at no cost to the County, the court opined, because they could only be used at County golf courses at certain times and because the County did not lose revenues when the plaintiffs took advantage of the discounts. (Doc. 64 at 11) The County's scheme to obtain free labor is no less a violation of the FLSA simply because the in-kind compensation it offered to induce that labor did not require budgetary expenditures. That principle is illustrated in <u>Rhea Lana</u>, where giving consignors "the opportunity to shop before the general public" prevented consignors from being classified as volunteers even though that in-kind benefit did not cause the employer to incur an expense. <u>Rhea Lana</u>, 925 F.3d at 523, 527.

While the golf discounts did not require the County to incur an expense, the County did lose revenue every time it collected $5 for a $96 round of golf. In the absence of a discount, the plaintiffs would have paid normal rates to golf on the County's golf courses. If the County allowed all golfers to play for $5, it would make no profit at all. Still, the question is whether the plaintiffs received a reasonable benefit, not whether the County incurred a cost to provide the

benefit. The economic value of a benefit is the value to the worker who receives it, not the cost to the employer providing the benefit. A store might give an employee a 30% discount on purchases, but the employee is required to report the 30% savings as income because that is the value of the benefit the employee receives. 26 U.S.C. § 132(c)(1). The store might lose its profit without incurring any expense by giving that discount to employees, but the cost to the store does not affect the financial value of the benefit to the employee.

The value of the benefit that the County promised its workers is $91 per round of golf played. As a matter of economic reality, there is no difference between giving a worker a $91 discount on a $96 round of golf or paying the worker $91 that the worker can spend on a $96 round of golf.

The statute and its implementing regulations distinguish reasonable benefits and nominal fees from compensation. See Mendel v. City of Gib., 727 F.3d 565, 570 (6th Cir. 2013) (defining issue before the court as whether plaintiffs received compensation "or merely a 'nominal fee'") The court's analysis of economic reality must therefore ask whether the benefit to the worker has a value that is similar to the value of wages. "In the context of the economic realities of [a] particular situation," the payment of wages is not a nominal fee but must be regarded as compensation. Id. at 571.

Exchanging seven hours of work for a benefit with that has a potential value of $455 or more (doc. 54: ¶ 33) vastly exceeds the Florida minimum wage.[12] The plaintiffs earned discounted golf rounds that allowed them to enjoy unlimited $5 rounds of golf that, in the absence of their work, would have cost them $96 each. The plaintiffs provided labor in exchange for an economic benefit that saved them hundreds of dollars in greens fees — dollars that they would otherwise have drawn from savings or worked to earn. Even if a worker played only one discounted round of golf per week, earning a $91 discount for 7 hours of work has a value of $13 per hour — a value that is nearly double the federal minimum wage and considerably higher than the Florida minimum wage. The promised benefit plainly has more than a nominal value. As a matter of economic reality, earning a benefit with a value that exceeds minimum wage is constitutes compensation. Yet the FLSA

---

[12] The district court suggested that it could not conclude whether the value of discounted golf exceeded minimum wage because the plaintiffs did not allege the precise number of hours they worked. (Doc. 65 at 13) If the court dismissed the Second Amended Complaint on that basis, it erred by failing to allow the opportunity to amend the complaint to allege those facts. More importantly, the court erred by failing to recognize that the definition of volunteer turns on what the plaintiffs were promised, not just on what they received. 29 C.F.R. § 553.101(a). Since the plaintiffs were promised unlimited rounds of discounted golf in exchange for seven hours of work (doc. 54: ¶ 33), the court should have considered the value of unlimited rounds of discounted golf in comparing the discounts to minimum wage. As this brief explains in footnote 13, plaintiffs who worked the threshold seven hours and played five rounds of discounted golf received a benefit worth $65 for each hour they worked.

requires minimum wage compensation to be paid with money, 29 C.F.R. § 531.27(a), not with discounted rounds of golf.

>3.    The promised golf discounts have more than a "nominal" value

The Department of Labor's view of "economic reality" is illustrated by its discussion of the "nominal fee" that employers can provide without turning volunteers into employees. In relevant part, the regulation states:

> A nominal fee is not a substitute for compensation and must not be tied to productivity. . . . The following factors will be among those examined in determining whether a given amount is nominal: The distance traveled and the time and effort expended by the volunteer; whether the volunteer has agreed to be available around-the-clock or only during certain specified time periods; and whether the volunteer provides services as needed or throughout the year. An individual who volunteers to provide periodic services on a year-round basis may receive a nominal monthly or annual stipend or fee without losing volunteer status.

29 C.F.R. § 553.106(e). The requirement that a nominal fee cannot be tied to productivity distinguishes compensation from token rewards that do not count as compensation. The plaintiffs' eligibility for discounted rounds of golf was directly tied to productivity. The plaintiffs needed to provide services of at least seven hours per week to be eligible for the discounts during that week. (Doc. 54: ¶ 33) The County's creation of a productivity threshold — a minimum number of hours the plaintiffs needed to work each week to become eligible for the benefit — establishes that the benefit is tied to productivity. Since the

plaintiffs were required to meet a minimum threshold of productivity to earn the discounts, the discounts constituted compensation, not nominal fees.

The County's compensation scheme contrasts with a public agency that pays a "fixed stipend amount regardless of an individual's time and effort." Purdham v. Fairfax Cty. Sch. Bd., 637 F.3d 421, 434 (4th Cir. 2011). Purdham received a stipend whether he did any work or no work. He was not required to meet a minimum productivity threshold to qualify for the benefit. The Second Amended Complaint alleges that the plaintiffs received discounted rounds of golf during the remainder of the week after working a minimum of seven hours. (Doc. 54: ¶ 33) That tie of compensation to "time and effort" distinguishes this case from Purdham.

The district court acknowledged that "the discounted golf privilege only accrues after a minimum number of hours are worked." (Doc. 65 at 12) The court noted that the discounts are "no longer" tied to productivity after the threshold is reached but did not explain the significance of that observation. The fact that benefits could have been tied to productivity in other ways does not change the fact that a designated amount of work was required before the benefit would be provided. Conditioning the receipt of benefits on a threshold level of productive plainly ties the benefits to productivity.

In addition, a fee that is the equivalent of an hourly wage is a "substitute for compensation" that § 553.106(e) prohibits. A payment of $500 per year might be regarded as nominal. Brown, 755 F.3d at 169. A payment that averages $6 per hour of work might also be regarded as nominal. Purdham, 637 F.3d at 434. A promised benefit with a value that exceeds minimum wage and that has a potential value of $65 per hour of work[13] is plainly a substitute for compensation.

The district court concluded that discounted rounds of golf might have less value than insurance benefits and thus do not count as compensation. (Doc. 64 at 12) By that logic, the County could pay its golf course workers $20 an hour for 7 hours of work per week and still classify them as "volunteers" because the worker's annual earnings of $7,280 would be less than the annual cost of health insurance.[14] No court has suggested that a benefit worth thousands of dollars a year is nominal. It is presumably to prevent

---

[13] A worker who works the required 7 hours for 52 weeks will work 364 hours per year. If the worker plays 5 rounds per week at $5 per round rather than usual price of $96 per round, the worker will receive a benefit worth $455 per week or $23,660 per year. Giving workers $23,660 in discounts for 364 hours of work provides in-kind compensation that is equivalent to $65 per hour. Few workers who provide manual labor are so highly compensated for their work.
[14] The average cost of individual health insurance coverage is $7,911 per year. 2022 Employer Health Benefits Survey, KFF (Oct. 27, 2022), https://www.kff.org/report-section/ehbs-2022-section-1-cost-of-health-insurance/.

governments from disguising substantial compensation as "reasonable benefits" that the Department of Labor tests reasonableness by whether the benefits are "commonly or traditionally provided to volunteers of State and local government agencies." 29 C.F.R. § 553.106(d). Certainly, a benefit that does not meet that test and that has the equivalent value of wages constitutes compensation as a matter of economic reality.

The County reads the words "reasonable" and "nominal" out of the statute when it argues that a hypothetical volunteer might receive a health insurance benefit that could pay hundreds of thousands of dollars for cancer care. The argument that insurance benefits could be worth hundreds of thousands of dollars, so any benefit or fee must be reasonable or nominal even if it is worth hundreds of thousands of dollars, deprives the statutory and regulatory language of any meaning.

While the district court did not expressly conclude that the discounted golf rounds are justified as a "nominal fee," it compared the unlimited golf rounds that the plaintiffs received to the $2,100 stipend paid to a high school coach in <u>Purdham</u>. The court noted that two of the three named plaintiffs received benefits that were valued at less than the stipend paid to the high school coach in <u>Purdham</u>. (Doc. 64 at 12-13) Plaintiff Shaw, however, played 43 discounted rounds of golf over a six-month period. (Doc. 54: ¶ 20) At $91

per round, his discount produced a value of $3,913 over six months or an annualized value of $7,826, a benefit substantially in excess of the stipend paid in <u>Purdham</u>. The court did not explain why its discussion of the stipend paid in <u>Purdham</u> justified the dismissal of Shaw's claim.

In any event, the value of the stipend in <u>Purdham</u> was fixed, while the benefits paid to golf course workers change in value from week to week, depending on how much golf the workers choose to play. That distinction is critical because the regulatory definition of volunteer is not tied to the compensation a worker actually receives but includes the compensation a worker is promised. 29 C.F.R. § 553.101(a). Workers are promised discounts for as many rounds as they want to play if they meet the threshold work requirement. (Doc. 54: ¶ 33) A worker who chooses to take advantage of that promise receives a benefit worth $455 if the worker plays five rounds per week. A worker who plays six or seven rounds per week would receive a benefit with an even greater value. Since the definition of volunteer is not limited to compensation received but includes compensation that is promised, the value of the compensation cannot be gauged by the number of discounted golf rounds any particular plaintiff chooses to play. The promised value is the potential value a worker could receive by taking full advantage of the promise.

If the economic reality test turns on a detailed analysis of the number of hours each plaintiff worked and the number of discounted rounds that each plaintiff played (as opposed to the benefit they were promised), applying that test on a motion to dismiss was error. The economic reality test is best applied at the summary judgment stage after discovery has been completed, not on a motion to dismiss. <u>Blandon v. Waste Pro United States</u>, No. 6:19-cv-2420-Orl-78GJK, 2020 U.S. Dist. LEXIS 254312, at *7 (M.D. Fla. Apr. 30, 2020). The only question at this stage is whether the allegations in the complaint make it plausible that the defendant is an employer. <u>Id</u>. The facts alleged in the Second Amendment Complaint are more than adequate to make that showing.

## I. Requiring the County to Pay Minimum Wage to the Plaintiffs Is Consistent with Policies Underlying the FLSA

The court need not rely on public policy to resolve this appeal. Nevertheless, if the court determines that the term "compensation" or "reasonable benefits" in 29 U.S.C. § 203(e)(4)(A) is ambiguous and finds no guidance in the regulations, it may consider the policies underlying the FLSA to resolve the meaning of those terms. <u>See</u> <u>Iraola & CIA, S.A. v. Kimberly-Clark Corp.</u>, 232 F.3d 854, 857 (11th Cir. 2000) (court may look beyond language of statute to determine congressional intent if statutory language is ambiguous).

There is no doubt that "Congress did not intend to discourage or impede volunteer activities" when it created the public service volunteer exception. 29 C.F.R. § 553.101(b). However, the public service volunteer exception is intended to encourage volunteerism for charitable, civic, or humanitarian purposes. 29 C.F.R. § 553.101(a). There is no evidence that Congress intended to give profit-making municipal enterprises an advantage over their competitors by giving municipal governments the gift of free labor when they operate a for-profit business.

It is not reasonable to believe that Congress intended to allow municipalities to avoid paying minimum wage to workers at a for-profit golf course. Inducing employees to perform free labor to make a for-profit golf course more attractive to customers could not have been what Congress had it mind when it enacted the public service volunteer exception. As the Department of Labor explained, Congress wanted to encourage volunteers to help the elderly, tutor disadvantaged children, tend to the sick, feed the homeless, or otherwise perform humanitarian or charitable services. See 29 C.F.R. § 553.104(b) (listing examples of public service volunteers). Nothing in the legislative record suggests that Congress intended to give for-profit municipal golf courses a competitive advantage over private golf courses by

relieving government of the obligation to pay minimum wage for work that attracts business customers.

Congress explained that the purpose of the FLSA is to eliminate labor conditions that are "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. Congress enacted a minimum wage to protect workers by assuring they are paid adequate wages. Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728, 739 (1981). "Congress intended for the FLSA to 'stretch[] the meaning of "employee" to cover some parties who might not qualify as such under a strict application of traditional agency law principles'." Salinas v. Commercial Interiors, Inc., 848 F.3d 125, 136 (4th Cir. 2017) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992). The FLSA is "remedial and humanitarian in purpose" and is meant to protect "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." Tennessee Coal, Iron R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944). Allowing the County to misclassify workers who are essential to the profitable operation of a business so that the County can avoid paying minimum wage for labor undermines the goals that the FLSA is meant to achieve.

The Supreme Court has explained that allowing employees to work for free would "exert a general downward pressure on wages." <u>Tony & Susan Alamo Found.</u>, 471 U.S. at 301. Allowing the County to obtain free labor when competing golf courses must pay wages to workers who perform identical services does not advance the goal of boosting wages. Nor does it comport with the congressional decision to stretch the meaning of "employee" to broaden the protection of workers. To the extent that the court considers policy arguments in addition to the statutory and regulatory text as evidence of congressional intent, the policies underlying the FLSA do not favor giving the County an unfair advantage over competing private employers by allowing it to deprive workers of wages that private sector employers are required to pay for identical work.

**II.    The District Court Erred by Dismissing Fair Labor Standards Act Claims and a Florida Minimum Wage Act Claim Based on the Conclusion that Workers Who Provide Services for a Municipality in Exchange for In-Kind Compensation Are Not Employees of the Municipality**

The Second Amended Complaint alleged that the County violated the FLSA and the Florida Minimum Wage Act by misclassifying the plaintiffs as volunteers rather than employees to avoid paying minimum wage. (Doc. 54: ¶¶ 69-73, 77-85) The Second Amended Complaint also alleged that the County

violated the FLSA by retaliating against plaintiff Kasmere when it fired him for complaining about the minimum wage violation. (Doc. 54: ¶¶ 89-101)

The statutes upon which those counts are based protect the rights of employees. The district court dismissed each count because it concluded that the alleged facts failed to show that the plaintiffs were employees. (Doc. 64 at 13-14) That conclusion was erroneous for the reasons discussed in section I of this argument. The court did not find that the Second Amended Complaint was insufficient as to any other element of the asserted claims. Since the dismissal was based on the erroneous conclusion that the alleged facts fail to state a plausible claim that the plaintiffs were employees of the County, the dismissal was in error. The order dismissing the Second Amended Complaint must therefore be reversed.

Even if the plaintiffs' status as employees is ambiguous, the lower court erred by dismissing the complaint before discovery could be conducted. A complaint should not be dismissed when the alleged facts plausibly demonstrate that discovery will reveal evidence to support the claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Whether a worker is an employee is a question of fact that must be decided on the basis of evidence. See Pietras v. Board of Fire Commissioners, 180 F.3d 468, 473 (2d Cir. 1999) (treating "employment status" of a non-salaried volunteer as "a fact

question"). Whether the receipt of benefits constitutes compensation is a question of fact that should be resolved by a jury. See Haavistola v. Community Fire Co. of Rising Sun, 6 F.3d 211, 221-22 (4th Cir. 1993) ("Because compensation is not defined by statute or case law, we hold that it cannot be found as a matter of law. The district court must leave to a factfinder the ultimate conclusion whether the benefits represent indirect but significant remuneration . . . ."); Price v. Grasonville Volunteer Fire Dep't, No. ELH-14-1989, at *23 (D. Md. Dec. 29, 2014) (court could not say, "as a matter of law, that [the plaintiff] was not an employee" in light of the benefits he received for volunteering). Those questions cannot be decided in this case prior to the development of a full evidentiary record.

If the case hinges on whether golf discounts are a benefit commonly and traditionally provided to volunteers, evidence will need to be gathered about the extent to which public agencies across the nation give golf discounts to volunteers. Palm Beach County will need to explain whether it gives golf discounts to volunteers who do not work for its Parks and Recreation Department, or to Department volunteers who do not serve its golf course customers. A benefit that is only given to a small subset of County volunteers or to no volunteers for public agencies anywhere else in the country can hardly

be deemed a common and traditional reward for volunteering, but the record is devoid of evidence to inform that inquiry.

If, as the County suggests, the case hinges on how often its unpaid workers take advantage of golf discounts, as opposed to the promise of unlimited rounds of discounted golf, the County will need to produce records of the discounted rounds that its workers have played. The County will also need to produce evidence of its fee structure at each golf course so that the plaintiffs can determine whether the discounts are, on certain days or at certain times, worth more than $91 per round.

Having stated a plausible claim that the County is violating the FLSA by compensating them with in-kind benefits but not paying a minimum wage, the plaintiffs are entitled to discovery to advance that claim. Whether the evidence will prove that claim should be determined at trial or on summary judgment. See Blandon v. Waste Pro United States, No. 6:19-cv-2420-Orl-78GJK, 2020 U.S. Dist. LEXIS 254312, at *7 (M.D. Fla. Apr. 30, 2020) (an economic reality analysis should be conducted at the summary judgment stage after discovery has been completed, not on a motion to dismiss). The dismissal order should be reversed so that the plaintiffs will have a fair opportunity to prove that they are, in fact, employees rather than volunteers as the FLSA uses those terms.

## CONCLUSION

For the reasons stated, the order dismissing the Second Amended

Complaint should be reversed. The case should be remanded for further

proceedings as if the motion to dismiss had been denied.

Respectfully submitted,

*/s/ Robert S. Norell*
ROBERT S. NORELL
Fla. Bar No. 996777
rob@floridawagelaw.com
ROBERT S. NORELL, P.A.
300 N.W. 70th Avenue, Suite 305
Plantation, FL 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P.

32(a)(7)(B) because this brief contains 11,827 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(f) and the corresponding circuit rule.

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and

the corresponding circuit rule because it was prepared in a proportionally

spaced typeface using Microsoft Word for Microsoft 365 with a Calisto MT

14-point font (a font that is similar to but more readable than Times New

Roman).

*/s/ Robert S. Norell*
ROBERT S. NORELL
*Counsel for Plaintiff-Appellant*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing brief has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on May 26, 2023, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Robert S. Norell*
ROBERT S. NORELL

May 26, 2023