NO. 23-11065-H

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**DAVID ADAMS, GERALD KASMERE, and
MICHAEL SHAW, on behalf of themselves
and others similarly situated,**
*Plaintiffs/Appellants,*

v.

**PALM BEACH COUNTY,**
*Defendant/Appellee.*

---

**From the United States District Court
for the Southern District of Florida**

---

**APPELLEE, PALM BEACH COUNTY'S, ANSWER BRIEF**

---

**ANAILI M. CURE**
Assistant County Attorney
**Counsel for Defendant/Appellee**
Palm Beach County Attorney's Office
301 North Olive Ave., Suite 359
West Palm Beach, Florida 33401
Florida Bar Number 119558
Tel.:  (561) 355-6337
Fax.:  (561) 655-4234

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT
# DAVID ADAMS, et al. v. PALM BEACH COUNTY

## Case No. 23-11065-H

Appellee, PALM BEACH COUNTY, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-4:

1. Adams, David, Plaintiff/Appellant

2. Cure, Anaili M., Counsel for Defendant/Appellee

3. Friedman, Howard S., Counsel for Plaintiffs/Appellants

4. Kasmere, Gerald, Plaintiff/Appellant

5. Middlebrooks, Donald M., United States District Court Judge

6. Norell, Robert Scott, counsel for Plaintiffs/Appellants

7. Palm Beach County, a political subdivision of the State, Defendant/Appellee

8. Palm Beach County Board of County Commissioners, governing Board of Palm Beach County, Defendant/Appellee

9. Quincy, Carey, Plaintiff/Appellant

10. Reinhart, Bruce E., United States Magistrate Judge

11. Shaw, Michael, Plaintiff/Appellant

12. Steigman, Jeffrey, Plaintiff/Appellant

13. Weaver, Shane, Counsel for Defendant/Appellee

No publicly traded company or corporation has an interest in the outcome of this appeal.

# STATEMENT REGARDING ORAL ARGUMENT

The County respectfully suggests that oral argument is unnecessary in this case. In 1976, the Fifth Circuit Court of Appeals issued *Usery v. Pilgrim Equipment Co., Inc.*, 527 F. 2d 1308 (5th Cir. 1976).[1] *Usery* makes clear that the Fair Labor Standards Act (FLSA) was enacted to provide protections to individuals "who as a matter of economic reality, are dependent upon the business to which they render service." *Id.* at 1311–12. "The purpose of the FLSA is to 'eliminate low wages and long hours' and 'free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers.'" *Id.* at 1311 (quoting *Rutherford Food Corp. v. Mccomb*, 331 U.S. 722, 727, 67 S.Ct. 1473, 1475, 91 L.Ed. 1772 (1947)). Notably, "[t]he protections provided by the FLSA, while broad in scope, were not intended to sweep everyone under the minimum wage umbrella." *Todaro v. Twp. of Union*, 40 F. Supp. 2d 226, 230 (D.N.J. 1999).

In 1985, the public agency volunteer exception was codified "to make clear

---

[1] All decisions of the Fifth Circuit Court of Appeals issued before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

that persons performing volunteer services for state and local governments should not be regarded as 'employees' under the statute." *See Brown v. N.Y.C. Dept. of Educ.*, 755 F. 3d 154, 161 n.4 (2d Cir. 2014) (*quoting* S. Rep. No. 99-159, at 14 (1985)). This Court's subsequent case law reaffirms these underlying purposes for enactment of both the FLSA and the public agency volunteer exception.

The District Court's determination that Plaintiffs were provided a "reasonable, non-compensatory" benefit in exchange for their civic service was correct and no oral argument is required.

# TABLE OF CONTENTS

**STATEMENT REGARDING ORAL ARGUMENT** ............................................i

**TABLE OF CONTENTS** ................................................................ iii

**TABLE OF AUTHORITIES**……………………………………………..vi

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**...............................................................................1

**STATEMENT OF THE ISSUES**..............................................................2

**STATEMENT OF THE CASE**................................................................3

    **I. PROCEDURAL HISTORY** .......................................................3

    **II. STATEMENT OF THE FACTS** ...............................................4

        **A. Non-Conclusory Allegations of the Second Amended Complaint and Opt-In Declarations**……………………………………………………...6

        **B. The District Court's Orders Dismissing Plaintiffs' Second Amended Complaint and the Opt-In Plaintiffs**……………………………………..12

        **C. Benefits were Reasonable and Consistent with Economic Realities**..17

        **D. Dismissal of the Opt-In Plaintiffs**……………………………………..19

**SUMMARY OF ARGUMENT**................................................................19

**STANDARD OF REVIEW** ....................................................................22

    **A.**      **De Novo Standard of Review Applies**……………………………..22

    **B.**      **Dismissal on a Motion to Dismiss was Proper**……………………24

**ARGUMENT** ................................................................................................25

**I.**    **THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS'
SECOND AMENDED COMPLAINT BECAUSE PLAINTIFFS FIT
SQUARELY WITHIN THE PUBLIC AGENCY VOLUNTEER EXCEPTION
TO THE FAIR LABOR STANDARDS ACT, WHERE THEY APPLIED FOR
A POSITION THAT WAS PLAINLY ADVERTISED AS A "VOLUNTEER"
WITH THE PALM BEACH COUNTY PARKS AND RECREATION
DEPARTMENT, AND BECAUSE OF THEIR CIVIC SERVICE TO THE
COUNTY, THEY RECEIVED "A REASONABLE, NON-COMPENSATORY,
LIMITED, GOLF-RELATED BENEFIT FOR VOLUNTEERING" (DOC. 64
– PG 12, ORDER ON MOTION TO DISMISS SECOND AMENDED
COMPLAINT). (RESTATED)** ............................................................26

    **A.**      **Plaintiffs' Improper Arguments**…………………………………..26

        **i.**      **Referring to the County's Golf Courses as "For-Profit"**……..26

        **ii.**     **Referring to Themselves as "Employees"**……………………..27

        **iii.**    **Referring to Discounted Rates of Golf as In-Kind
Compensation**……………………………………………………...27
            8

        **iv.**    **Implying that a Limitation Exists on Types of Volunteer
Services**……………………………………………………………..28

        **v.**     **Incorrectly Asserting "Unlimited Golf" Was Promised to the
Volunteers**…………………………………………………………..29

    **B.**      **Purposes Underlying the FLSA Support Affirmance**……………30

        **i.**      **Purposes for Enacting the FLSA**……………………………...31

ii.    Purposes for Enacting the Public Agency Volunteer
       Exception……………………………………………....34

C.    The FLSA and DOL's Implementing Regulations Defining
      Volunteers………………………………………………..36

D.    Plaintiffs Were Properly Classified As Volunteers Under the
      FLSA and Implementing Regulations……………………………40

      i.    Plaintiffs Were Provided a Reasonable Benefit, Not
            Compensation………………………………………………..40

      ii.   Commonly or Traditionally Provided Benefits…………….....46

      iii.  Under the Economic Realities Test, Plaintiffs' Livelihoods
            Were Not Dependent Upon Non-Essential Discounted Golf
            Games from the County………………………………………48

      iv.   Benefit Not Tied to Productivity……………………………..49

E.    Plaintiffs' Services Improved the Lives of County Residents…..50

F.    Taxable Income Argument Irrelevant…………………………...51

G.    Dismissal With Prejudice Was Proper Because Amendment Was
      Futile………………………………………………………………52

H.    Dismissal of FMWA and Retaliation Claims Was Proper……..53

CONCLUSION ..................................................................................53

CERTIFICATE OF COMPLIANCE ...................................................54

CERTIFICATE OF SERVICE ............................................................55

v

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,

   556 U.S. 662 (2009) ........................................................................ 22

*Associated Builders, Inc. v. Ala. Power Co.*,

   505 F.2d 97 (5th Cir. 1974) .............................................................23

*Bartels v. Birmingham*,

   332 U.S. 126 (1947) ........................................................................31

*Beeler v. Astrue*,

   651 F.3d 954, 960 (8th Cir. 2011)……………………………………….47

*Bell Atl. Corp. v. Twombly*,

   55 U.S. 544, 570 (2007)………………………………………….23, 28

*Blake v. Batmasian*,

   191 F. Supp. 3d 1370, 1376 n. 1 (S.D. Fla. 2016)…………………………...25

*Bonner v. City of Prichard*,

   661 F.2d 1206 (11th Cir. 1981) (*en banc*)............................................................ i

*Brooklyn Sav. Bank v. O'Neil*,

324 U.S. 697 (1945) ..........................................................................................32

*Brown v. New York City Dept. of Educ.*,

755 F.3d 154 (2nd Cir. 2014) ..................................................... passim

*Burger King Corp. v. Weaver*,

169 F.3d 1310 (11th Cir. 1999)...........................................................24

*Cartaya v. United States Dep't of Agric. Forest Serv.*,

6:18-CV-02042-MC, 2022 WL 226808, at *3 (D. Or. Jan. 26, 2022)…………38

*City of Miami v. Citigroup Inc.*,

801 F.3d 1268 (11th Cir. 2015)...........................................................24

*Cleveland v. City of Elmendorf*,

388 F.3d 522 (5th Cir. 2004) ....................................................... 14, 38

*Coca-Cola Bottling Co. of Ogden, Inc. v. Coca-Cola Co.*,

4 F.3d 930, 937 (10th Cir. 1993)………………………………………….46

*Dean v. Warren*,

12 F.4th 1248 (11th Cir. 2021)..................................................... 22, 23

*Doe v. Smith*,

429 F.3d 706, 708 (7th Cir. 2005)………………………………………....25

*Duncan v. Walker*,

533 U.S. 167, 174 (2001)……………………………………………………41

*E.E.O.C. v. Erie Cty.*,

  751 F.2d 79, 82 (2d Cir. 1984)………………………………………………45

*Encino Motorcars, LLC v. Navarro*,

  200 L. Ed. 2d 433 (2018)……………………………………………………36

*Forrest Gen. Hosp. v. Azar*,

  926 F.3d 221, 229 (5th Cir. 2019)……………………………………..…...41

*Freeman v. Key Largo Volunteer Fire and Rescue Dep't, Inc.*,

  494 Fed. App'x 940, 943–44 (11th Cir. 2012)……………………….…24, 28, 48

*Griffin Industries, Inc. v. Irvin*,

  496 F.3d 1189 (11th Cir. 2007) ................................................... 23, 30

*Haavistola v. Community Fire Co. of Rising Sun*,

  6 F. 3d 211, 221-22 (4th Cir. 1993)………………………………..……..28

*Harris v. Mecosta Cnty.*,

  1:95-CV-61, 1996 WL 343336, at *4 (W.D. Mich. Feb. 6, 1996)………..…..43

*Legal Envtl. Assistance Found., Inc. v. Bd. of Cty. Com'rs of Brevard Cty., Fla.*,
  10 F.3d 1579, 1584 (11th Cir. 1994)……………………………………….47

*Littleton v. Manheim Remarketing, Inc.*,

  1:17-CV-3589-TCB, 2018 WL 11454850, at *2 (N.D. Ga. Apr. 19, 2018)…….25

*Marrache v. Bacardi U.S.A., Inc.*,

    17 F.4th 1084 (11th Cir. 2021)..............................................................................24

*McKay v. Miami-Dade County*, Case No. 20-14044, (11th Cir.)…………...….29, 36

*Michel v. NYP Holdings, Inc.*,

    816 F.3d 686 (11th Cir. 2016) ..........................................................................23

*Morrill v. Jones*,
    106 U.S. 466 (1883)………………………………………………………46

*Okoro v. Pyramid 4 Aegis*,

    11-C-267, 2012 WL 1410025, at *1 (E.D. Wis. Apr. 23, 2012)………...………42

*Pietras v. Board of Fire Commissioners*,

    180 F. 3d 468, 473 (2d Cir. 1999)………………………………………..…...28

*Poder in Action v. City of Phoenix*,

    481 F. Supp. 3d 962, 966 (D. Ariz. 2020)………………………………....42

*Price v. Grasonville Volunteer Fire Dept.*,

    CIV.A. ELH-14-1989, 2014 WL 7409891, at *1 (D. Md. Dec. 30, 2014)……...28

*Purdham v. Fairfax Cty. School Bd.*,

    637 F.3d 421 (4th Cir. 2011) ..................................................... passim

*Rafferty v. Denny's, Inc.*,

    13 F.4th 1166, 1190 (11th Cir. 2021)………………………………………45

*Ramirez v. County Of Live Oak*,

    2005 WL 167308, at *4 (Tex. App. Jan. 27, 2005)………………………….…43

*Resnick v. Avmed, Inc.*,

    693 F.3d 1317 (11th Cir. 2012)...........................................................................22

*Rhea Lana, Inc. v. United States*,

    925 F.3d 521, 522 (D.C. Cir. 2019)……………………………………………….42

*Rutherford Food Corp. v. Mccomb*,

    331 U.S. 722 (1947) ................................................................. i, 21, 32

*Schumann v. Collier Anesthesia, P.A.*,

    803 F.3d 1199 (11th Cir. 2015).................................................... 31, 32

*Scott v. Experian Info. Sols., Inc.*,

    18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018)…………….22

*Todaro v. Township of Union*,

    40 F.Supp.2d 226 (D.N.J. 1999)................................................... passim

*Tony & Susan Alamo Foundation v. Sec'y of Labor*,

    471 U.S. 290 (1985) ................................................................... 15, 42

*United States v. Menasche*,

    348 U.S. 528, 538-39 (1955)…………………………………………….....41

*United States v. Calamaro*,

   354 U.S. 351, 358-59 (1957)………………………………………………...46

*U.S. Dept. of Labor v. Lauritzen*,

   835 F.2d 1529, 1538 (7th Cir. 1987)…………………………………………...48

*Usery v. Pilgrim Equipment Co., Inc.*,

   527 F. 2d 1308 (5th Cir. 1976) ................................................................. i, 21, 31

*Vlad-Berindan v. NYC Metro. Transp. Auth.*,

   779 Fed. Appx. 774 (2d Cir. 2019)…………………………………...……..42, 43

*Walling v. Portland Terminal Co.*,

   330 U.S. 148 (1947) ........................................................................................32

*White v. J.A.W. Entm't, Inc.*,

   23-CV-21260, 2023 WL 4763746, at *2 (S.D. Fla. July 26, 2023)……………..24

*Whittington v. United States*
   867 F. Supp. 2d 102, 107 (D.D.C. 2012)……………………………………..30

*Wiegand v. Royal Caribbean Cruises Ltd.*,

   21-12506, 2023 WL 4445948, at *2 (11th Cir. July 11, 2023)……………….....25

**STATUTES**

28 U.S.C. § 1291 (2021) ..........................................................................................1

28 U.S.C. § 1331 (2021) ..........................................................................................1

29 U.S.C. § 203 (2021) .................................................................... passim

29 U.S.C. § 206 (2021) ............................................................. 1, 36, 43

§ 448.110, Fla. Stat. (2021).................................................................1

## REGULATIONS

29 C.F.R. § 553.101 ....................................................................... passim

29 C.F.R. § 553.104 ..................................................................... 12, 13

29 C.F.R. § 553.106 ....................................................................... passim

## RULES

11th Cir. Rule 28-5.............................................................................3

## OTHER AUTHORITIES

Fla. Const. § 24, Art. X .....................................................................1

National Recreation and Park Association, Parks and Improved Mental health and Quality of Life, https://www.nrpa.org/our-work/Three-Pillars/health-wellness/ParksandHealth/fact-sheets/parks-improved-mental-health-quality-life/#:~:text=More%20time%20spent%20in%20parks,of%20life%20for%20your%20community (last visited February 18, 2022)......................................................50

The Need To Save Municipal Golf Courses And Importance Of Driving Ranges, Golfshake Editor, https://www.golfshake.com/news/view/16074/The_Need_To_Save_Municipal_Golf_Courses_And_Importance_Of_Driving_Ranges.html (last visited August 1, 2023)……………………………………………………………………………51

The Business of Municipal Golf, A Look At The Important Role Municipal Golf Courses Play, Doerfler, Jared, PERFECT PUTT, *available at* https://perfectputt.substack.com/p/the-business-of-municipal-golf ((last visited August 1, 2023)………………………………………………………………...51

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The United States District Court for the Southern District of Florida had subject matter jurisdiction over Plaintiffs'/Appellants' Second Amended Complaint ("SAC"), alleging claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206; the Florida Minimum Wage Act, (FMWA), section 448.110, Florida Statutes (2021); and section 24, Article X of the Florida Constitution, pursuant to 28 U.S.C. § 1331 (2021). (Doc. 54).

The District Court dismissed the Named Plaintiffs' SAC with prejudice. (Doc. 64). The Named Plaintiffs appealed that Order.

Upon remand for lack of jurisdiction from that previous appeal, the District Court found that the two Opt-In Plaintiffs were similarly situated to the Named Plaintiffs and incorporated and adopted the prior Order — holding that the Named Plaintiffs failed to state claims upon which relief could be granted — to the Opt-In Plaintiffs' claims, thereby adjudicating the claims of all Plaintiffs. (Doc. 73). The latest Order of Dismissal is a final decision disposing the claims of all Plaintiffs.

This Court has jurisdiction to review the District Court's Orders of Dismissal with Prejudice pursuant to 28 U.S.C. § 1291 (2023).

**STATEMENT OF THE ISSUES**

I.      The District Court correctly dismissed Plaintiffs' SAC because Plaintiffs fit squarely within the public agency volunteer exception to the FLSA, where they applied to volunteer for a position that was plainly advertised as a "Volunteer" position at the County's public golf courses within the County's Parks and Recreation Department, and due to their civic service to the County, in addition to spending time outdoors and getting to know others with similar interests, the volunteers were provided "a reasonable, non-compensatory, limited, golf-related benefit for volunteering." (Doc. 64, pg. 12) (restated).

## STATEMENT OF THE CASE

Plaintiffs/Appellants, David Adams, Gerald Kasmere, Michael Shaw, Carey Quincy, and Jeffrey Steigman will be referred to by name, as Plaintiffs or as Appellants.

Appellee, Palm Beach County, will be referred to as the Appellee or as the County. The County's Parks and Recreation Department will be referred to as such or as Parks and Recreation.

The record will be noted by reference to the document number (Doc) and page number (pg) within the document, pursuant to 11th Circuit Rule 28-5.

Appellants' Brief will be referenced by page number, as will Appellants' Appendix (App.).

## PROCEDURAL HISTORY

Appellants' Brief contains an accurate recitation of the Procedural History of this case, with the exception that Appellants represent that a motion to facilitate notice to the collective and class was pending when the case was dismissed. (Appellants' Brief, pgs. 3-4). That motion was not pending, as the District Court bifurcated this case into two phases "'with the first phase focusing on the merits of the case, *i.e.* whether Plaintiffs were properly classified as volunteers or whether they should have been classified as employees, and the second phase focusing on

class issues." (Doc. 30). Additionally, Appellee adds that on July 14, 2021, the District Court Judge held a hearing on Appellee's Motion to Dismiss the First Amended Complaint. Thus, the District Court Judge had an opportunity to ask questions and give directions to Appellants on what needed to be plead to survive a Motion to Dismiss in this case.

## STATEMENT OF THE FACTS

Plaintiffs attached a composite exhibit to their SAC, which contained notices from the County's Parks and Recreation Department's website seeking volunteers for four of the County's golf facilities, including the Osprey Point Golf Course where Plaintiffs alleged they provided services (Doc. 55-1). The ad seeking volunteers for Osprey Point Golf Course was reproduced in the decision below, as the District Court found it relevant to demonstrate that Plaintiffs applied for positions plainly advertised as "volunteer." The Osprey Point Golf Course ad is reproduced on the following page of this brief.

 

## Osprey Point Golf Course



**Project Description:**
This is a high volume 27 hole golf facility that opened in 2010. The course is the first in Florida to receive Audubon Certified Classic Sanctuary status. Volunteers serve as course rangers, driving range attendants and bag drop attendants. Hours vary. Nights and weekends preferred. Osprey Point volunteers enjoy being outdoors, getting to know others with similar interests and reduced fees to play and practice golf.

- Minimum Age requirement: 16 with driver's license. Golf Cart detailing is available to those without a driver's license on a limited basis.
- Must enjoy serving guests and fellow staff members, possess a positive personality, be flexible in job assignments, be a team player.
- Some golf knowledge preferred but not required.
- Must be available at least 6 months per year to qualify

*"This site doesn't provide court ordered volunteer hours.

| | |
|---|---|
| **Volunteers Needed:** | Unlimited |
| **Project Meeting Location:** | Osprey Point Golf Course |
| | 12551 Glades Road |
| | Boca Raton, FL 33498 |
| | View Location Map |
| **Project Organizer:** | Osprey Point Golf Course |
| | ospreypointgc@pbcgov.org |
| | 561-482-2868 |
| **Project Category:** | Palm Beach County |

Apply to participate in this project   Record

< Back to Service Project Listing

5

(Doc. 55-1 pg 2).

The ad uses the word "volunteer" four times:    1) "Volunteers serve as course rangers . . ."; 2) "Osprey Point volunteers enjoy being outdoors and getting to know others with similar interests . . ."; 3) "This site doesn't provide court ordered volunteer hours"; and 4) "**Volunteers Needed**" (App. 32) (emphasis in original).

### A.    Non-Conclusory Allegations of the Second Amended Complaint and Opt-In Declarations

Disregarding all conclusory allegations of Plaintiffs' SAC, the remaining allegations provide the following:

- The County operates four golf courses as profit making enterprises and derives substantial revenue from the operation of these golf courses. (App.168).

- Plaintiffs responded to ads that sought "volunteers" to render services at County-owned golf courses in exchange for the opportunity to enjoy Audobon Certified Sanctuary settings, the Florida climate, camaraderie with fellow golfers, and reduced fees to play and practice golf. (App. 32; 173).

- The ads included the word "volunteer" numerous times. (App. 32-35).

- One of the ads also specified that the reduced fees were available during

"designated times." (App. 35).

- Plaintiff does not allege the ads provided, or even suggested, that cash or credit would be provided to those who responded to the ads.

- Plaintiff Adams performed duties assigned by management at Osprey Point Golf Course including cart attendant, ranger, and range ball picker. (App. 169).

- The County classified Adams as a volunteer, and he was not paid wages. (App. 169).

- Adams was not allowed to choose his duties. (App. 169).

- Adams was not allowed to sit while performing services. (App. 169).

- Adams was allowed to play rounds of golf at a discounted rate, provided he worked at least one shift of at least 7 hours per week, subject to certain days, times, and locations where discounted golf rounds were made available. (App. 170).

- Adams was allowed to accept tips. (App. 170).

- Adams used the discounted golf rounds from October 2016 through November 2019, approximately three years and two months, and received discounted rounds of golf on approximately 31 occasions, saving $2,821.00 in total off the full price of these rounds of golf, or

$890.00 per year, or $74.16 per month. (App. 170).

- Plaintiff Shaw performed duties assigned by management at Osprey Point Golf Club for seven years, including ranger and cart attendant. (App. 170).

- Shaw was classified as a volunteer and was not paid wages. (App. 170).

- Shaw was not allowed to choose the specified duties for which he volunteered, and he was required to follow rules such as not sitting while performing services. (App. 170).

- Shaw was allowed to play rounds of golf at a discounted rate, provided he worked at least one shift of at least 7 hours per week, subject to certain days, times, and locations where discounted golf rounds were made available. (App. 170).

- Shaw was allowed to accept tips. (App. 170).

- Shaw used the discounted golf rounds from February of 2019 August 2019, approximately seven months, and received discounted rounds of golf on approximately forty-three occasions, saving $3,913.00 in total, or $559.00 per month. (App. 171).

- Plaintiff Kasmere performed duties assigned by management at Osprey Point Golf Club for approximately four and one-half years, including

cart attendant, ranger, and range assistant. (App. 171).

- Kasmere was classified as a volunteer and was not paid wages (App. 171).

- Kasmere was not allowed to choose the specified duties for which he volunteered, and he was required to follow rules such as not sitting while performing services. (App. 171).

- Kasmere was allowed to play rounds of golf at a discounted rate, provided he worked at least one shift of at least 7 hours per week, subject to certain days, times, and locations where discounted golf rounds were made available. (App. 171).

- Kasmere was allowed to accept tips. (App. 171).

- Kasmere used the discounted golf rounds from October of 2016 through March of 2020, approximately three years and six months, and received discounted rounds of golf on approximately ninety-five occasions, saving $8,645.00 in total, or $2,470.00 per year, $205.83 per month. (App. 15-1, 171-72).

- Plaintiff Steigmann performed duties at Osprey Point Golf Club for approximately three years, including care of golf carts, interacting with guests, and bag drop attendant. (Doc. 6-5, pg. 1).

- Steigmann was classified as a volunteer and advised that volunteers were not paid wages. (Doc. 6-5, pg. 1).

- It is unknown whether Steigmann utilized the available reduced fees to play golf, and if so, how often.

- Quincy performed duties at Osprey Point Golf Club for approximately four years, including ranger, cart attendant, range assistant, and starters assistant. (Doc. 6-3, pg. 2-3).

- Quincy was classified as a volunteer. (Doc. 6-3, pg. 2).

- Osprey Point management made it clear to volunteers that they were strictly volunteers and that the policy was not to pay any wages to volunteers. (Doc. 6-3, pg. 2-3).

- Quincy had the flexibility to trade shifts with other employees if he did not want to work a shift. (Doc. 6-3, pg. 2).

- It is unknown whether Plaintiff Quincy utilized the available reduced fees to play golf, and if so, how often.

- Plaintiffs performed duties provided by workers at private golf courses that enhanced the value of the golfing experience and are essential to attract customers and maintain the reputation of a golf course as a premiere place to play golf. (App. 172).

- The services Plaintiffs provided are integral to the operation of golf courses that are comparable to the County's golf courses. (App. 172).

- Workers who provide services at ***private*** golf courses are paid wages. (App. 172) (emphasis added).

- Services provided by Plaintiffs included greeting customers, carrying golf clubs, loading golf clubs into carts, cleaning golf clubs and golf balls, cleaning and charging golf carts, furnishing scorecards and pencils, moving golf carts to and from cart barns, assisting the starter, patrolling the range, raking sand traps, policing the pace of play, filling divots, replenishing supplies of sand, picking up trash, and retrieving driving range balls. (App. 172).

- If not for Plaintiffs, the County would have to hire employees to perform the duties of its volunteers. (App. 173).

- Plaintiffs were promised, expected to receive, and did receive heavy discounts for an "unlimited"[2] number of rounds of golf, which had substantial economic value to Plaintiffs. (App. 174).

- The rates for rounds of golf vary. (App. 174).

---

[2] The County addresses Plaintiffs' misrepresentation of "unlimited golf" in Argument Sections I.A.v and I.D.i.

- The County typically charges customers $96 for a round of golf at Osprey Golf Course, and Plaintiffs who worked seven hours per week would pay $5 for a round of golf. (App. 174).

**B.**     **The District Court's Orders Dismissing Plaintiffs' Second Amended Complaint and the Opt-In Plaintiffs**

The District Court considered these remaining allegations of Plaintiffs' SAC and dismissed the complaint with prejudice (Doc. 64, App. 251-65).

The District Court began its legal analysis by reciting the definition of "employee" within the FLSA, as well as the public agency volunteer exception contained in 29 U.S.C. § 203(e)(4)(A) and the regulations promulgated to implement that exception, including the definition of "volunteer" contained in 29 C.F.R. § 553.101(a) (App. 256). The Court noted 29 C.F.R. § 553.104(a) and (b) and 29 C.F.R. § 553.106, which provide in pertinent part:

29 C.F.R. § 553.104 Private Individuals Who Volunteer Services to Public Agencies

(a) Individuals who are not employed in any capacity by State or local government agencies often donate hours of service to a public agency for civic or humanitarian reasons. *Such individuals are considered volunteers and not employees of such public agencies if their hours of service are provided with no promise expectation, or receipt of compensation for the services rendered, except for reimbursement for expenses, reasonable benefits, and nominal fees, or a combination thereof, as discussed in § 553.106.* There are no limitations or

restrictions imposed by the FLSA on the types of services which private individuals may volunteer to perform for public agencies.

(b) Examples of services which might be performed on a volunteer basis when so motivated include helping out in a sheltered workshop or providing personal services to the sick or the elderly in hospitals or nursing homes; assisting in a school library or cafeteria; or driving a school bus to carry a football team or band on a trip. Similarly, individuals may volunteer as firefighters or auxiliary police, or volunteer to perform such tasks as working with retarded or handicapped children or disadvantaged youth, helping in youth programs as camp counselors, soliciting contributions or participating in civic or charitable benefit programs and volunteering other services needed to carry out charitable or educational programs.

29 C.F.R. § 553.104(a) and (b) (emphasis added in District Court Order) (App. 256-57).

29 C.F.R. § 553.106 Payment of expenses, benefits, or fees.

(a) Volunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers.
. . .

(c) [*sic*] (d) Individuals do not lose their volunteer status if they are provided reasonable benefits by a public agency for whom they perform volunteer services. Benefits would be considered reasonable, for example, when they involve inclusion of individual volunteers in group insurance plans (such as liability, health, life, disability, workers' compensation) or pension plans or "length of service" awards, commonly or traditionally provided to volunteers of State and local government agencies, which meet the additional test in paragraph (f) of this section.
. . .

(f) *Whether the furnishing of expenses, benefits, or fees would result*

13

> *in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation.*

(App. 257-58) (emphasis added in District Court Order).

The District Court cited *Brown*, for the principle that "[a]ny expectation of compensation must be objectively reasonable." *Brown v. New York City Dept. of Educ.*, 755 F.3d at 166 & n.10. (App. 258). *Todaro v. Township of Union*, 40 F.Supp.2d 226 (D.N.J. 1999) was cited for the principle that "[T]he definition of "volunteer" must be applied in a common-sense way that takes into account the totality of the circumstances surrounding the relationship between the person providing services and the entity for which the services are provided, in light of the goals of the FLSA." *Id.* at 230. (App. 258). The District Court relied on *Cleveland v. City of Elmendorf*, 388 F.3d 522 (5th Cir. 2004) for the principle that the court must look "at the objective facts surrounding the services performed to determine whether the totality of the circumstances supports a holding that, under the statute and under the regulations, the non-paid regulars are volunteers." *Id.* at 528 (citing *Tony & Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 295 (1985)); *accord Purdham v. Fairfax Cty. School Bd.*, 637 F.3d 421, 428 (4th Cir. 2011) (App. 258).

Applying these principles to the SAC, the District Court concluded that even if Plaintiffs "subjectively believed they should be paid wages for their services, that belief would not be objectively reasonable." (App. 259). It noted that the positions Plaintiffs accepted at Osprey Point "were clearly and unequivocally advertised as volunteer positions," as the ad did not mention wages, and stated that discounted golf could be enjoyed, "equivalent to being outdoors and getting to know others with similar interests, neither of which is akin to compensable wages." (App. 259).

The District Court reasoned that "[a] person seeing that ad would not reasonably conclude that wages would be paid." (App. 259). It noted that "working as a ranger or cart attendant at a public golf course is akin to other positions that are amenable to volunteerism," such that there was nothing "inherent about the job or job duties that would reasonably suggest that wages necessarily would be paid." (App. 259).

The District Court concluded:

In sum, it is not objectively reasonable to expect wages when you sign up for a position advertised for volunteers, that can be performed by volunteers, then do not receive wages for an extended period of time. The only objectively reasonable conclusion from those facts is that you have accepted a volunteer position that pays no wages. Plaintiffs' argument to the contrary borders on frivolous.

(App. 259-60).

The District Court rejected Plaintiffs assertion that the "reasonable benefit" provision within the regulations did not apply because discounted rounds of golf are not "commonly and traditionally" provided to public agency volunteers, noting that the FLSA does not include a "commonly and traditionally" requirement, rather it speaks only of reasonable benefits (App. 260-61) (citing 29 U.S.C. § 203 (e)(4)(A)). Additionally, 29 C.F.R. § 553.106(c) discussed certain benefits that are "commonly and traditionally" provided in the context of examples, rather than an all-inclusive list. (App. 260-61).

The District Court noted that 29 C.F.R. § 553.106(c) cross-references paragraph (f), which states:

> Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation.

29 C.F.R. § 553/106(f) (App. 260-61).    The Court then concluded that "the ultimate touchstone is reasonableness under the totality of the circumstances of the economic relationship."    (App. 261).

### C.    Benefits were Reasonable and Consistent with Economic Realities

The District Court reasoned that Plaintiffs, volunteers at a golf course, were

offered discounted rounds of golf that could be used only on "certain days, times, and locations where discounted golf rounds were made available," and only on County-owned courses, which did not cost the County anything.  (App. 261).  The Court noted that Plaintiffs did not allege "that allowing these discounted rounds precluded others (who would pay full price) from using the courses."  (App. 261). The District Court noted there were no allegations in the complaint "to refute the logical inference that there was no material marginal cost to the County from allowing an extra round of golf to be played."  (App. 261).

Finally, the District Court noted that the complaint lacked any allegation that the benefit "could be monetized by transferring it to a third party."  (App. 261-62). The Court concluded:  "All of these factors support a finding that Plaintiffs were receiving a reasonable, non-compensatory, limited, golf-related benefit for volunteering at a golf course." (App. 262).

The District Court analogized the facts of this case to *Purdham v. Fairfax Cty. School Bd.*, 637 F.3d 421, 428 (4th Cir. 2011), where the Fourth Circuit concluded that a school security employee who also served as a golf coach and was paid an annual stipend of approximately $2,300, plus expense reimbursement and mileage allowance, was a volunteer because the stipend was a "nominal fee" for purposes of the public agency volunteer exception. (App. 262).

The District Court noted that although the discounted golf privilege only accrued after a minimum number of hours were worked, "once it is implicated, it is not tied to the number of hours worked." (App. 262-63).

The District Court held that:

> The Second Amended Complaint fails to allege sufficient facts to establish a plausible claim that Plaintiffs were "employees" under the FLSA. For that reason, Count I must be dismissed under Rule 12(b)(6).

(App. 263).

Because Plaintiffs' state-law minimum wage claims must be interpreted consistent with the FLSA, the District Court dismissed those claims as well. (App. 264). Because Plaintiff Kasmere was not an "employee" of the County as a matter of law, his retaliation claim was also dismissed (App. 264).

Finally, the District Court noted that dismissal with prejudice was proper because Plaintiffs were given multiple opportunities to plead sufficient facts to establish they were "employees" and they repeatedly failed to make a sufficient showing. (App. 265). The Court concluded "[t]here is no reason to believe that they could now plead additional facts that would overcome the deficiencies discussed above." (App. 265).

### D. Dismissal of the Opt-In Plaintiffs

On remand, the District Court also dismissed the Opt-In Plaintiffs' claims. (App. 292-94). The District Court found the Opt-In Plaintiffs to be similarly situated to the Named Plaintiffs and noted that "Because there is no material factual difference between the Opt-In Plaintiffs and the Named Plaintiffs, the Opt-In Plaintiffs' claims must be dismissed for the same reasons as the Named Plaintiffs' claims." (App. 293). The District Court then adopted and incorporated the prior Order holding the named Plaintiffs failed to state claims upon which relief could be granted and dismissed the Opt-In Plaintiffs' claims with prejudice. (App. 293-94).

## SUMMARY OF ARGUMENT

The District Court correctly concluded Plaintiffs were public agency volunteers, not employees, where the allegations of the SAC show that they applied for a position that was plainly and clearly advertised as a "volunteer" with the County's Parks and Recreation Department, and in exchange for their civic service, they received the opportunity to enjoy being outdoors, getting to know others with similar interests, and "a reasonable, non-compensatory, limited, golf-related benefit for volunteering." (App. 262).

The District Court's conclusion is supported by reference to Congress's purpose in enacting the FLSA, Congress's passage of the public agency volunteer exception, the language of the implementing regulations, and a review of case law

regarding volunteers in the public sector. As the Fifth Circuit noted in *Usery*, 527 F.2d at 1311–12, the FLSA, as a matter of "social legislation" extends protections to those "who as a matter of economic reality, are dependent upon the business to which they render service." The implementing regulations provide a framework for determining whether an individual is an employee or volunteer that focuses on the economic reality of the totality of the circumstances viewed in an objective, common-sense manner.

Plaintiffs' focus on private golf courses is irrelevant to the inquiry here. It cannot be denied that the County is a public agency under the FLSA.

Moreover, Plaintiffs' assertion that they are employees entitled to receive wages because of the value of the discounted golf they were allowed to enjoy, turns the FLSA on its head. "The purpose of the FLSA is to 'eliminate low wages and long hours' and 'free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers.'" *Id.* at 1311 (quoting *Rutherford Food Corp. v. Mccomb*, 331 U.S. 722, 727, 67 S.Ct. 1473, 1475, 91 L.Ed. 1772 (1947)). Plaintiffs, of their own free will, applied for positions advertised plainly as "volunteers" with a public agency, and in exchange for their civic service to this public agency, received a reasonable benefit, the value of which they themselves controlled. The purposes underlying enactment

of the FLSA are not implicated here. However, the purposes underlying the public agency volunteer exception – "to make clear that persons performing volunteer services for state and local governments should not be regarded as 'employees' under the statute" – are directly implicated in this case. S. REP. 99-159, 14, 1985 U.S.C.C.A.N. 651, 662.

Plaintiffs argue that because they received a benefit of "heavily discounted" rounds of golf, their savings should be considered compensation. Taking this argument to its logical conclusion produces an absurd result wherein depending on how many discounted rounds of golf each volunteer enjoyed would ultimately determine that individual's classification as a volunteer or an employee. This would result in an unworkable standard ultimately "imped[ing] volunteerism because public agencies, if placed at risk of owing FLSA back pay based on persons' subjective expectations of payment, will be more reluctant to accept volunteered services." This result is inconsistent with "Congress's intent not to discourage or impede volunteering." *Brown*, 755 F.3d at 166; *Todaro*, 40 F. Supp. 2d at 229.

The District Court properly dismissed Plaintiffs' SAC and the Opt-In Plaintiffs. Dismissal with prejudice was proper because amendment would be futile and Plaintiffs have been provided at least three opportunities to adequately plead that they were employees, yet have failed each time. The County urges

affirmance of the orders here appealed.

## STANDARD OF REVIEW

### A.    <u>De Novo Standard of Review Applies</u>

This Court reviews a district court's dismissal of a complaint for failure to state a claim upon which relief may be granted *de novo*. *Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). "[W]hen determining whether a complaint survives a motion to dismiss, we begin by identifying allegations that, because they are merely conclusory or state legal conclusions, are entitled to no presumption of truth." *Dean v. Warren*, 12 F.4th 1248, 1256 (11th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Factually unsupported allegations based on information and belief and speculative statements are not entitled to the assumption of truth. *Scott v. Experian Info. Sols., Inc.*, 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018).

The remaining allegations of the complaint are then considered to determine if the complaint "'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"" *Dean*, 12 F.4th at 1256 (quoting *Iqbal*, 556 U.S. at 678, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility rests between "possibility" and "probability" and we determine whether a complaint satisfies that standard by 'draw[ing] on [our] judicial

22

experience and common sense.'"   *Dean*, 12 F.4th at 1256 (quoting *Iqbal*, 556 U.S. at 678-79).

The Court is not bound to accept the truth of general allegations in a complaint where they are contradicted by specific factual details in attached exhibits.   *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (citing *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.   Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974))).

This Court will "review *de novo* an order denying leave to amend on the grounds of futility, because it is a conclusion of law that an amended complaint would necessarily fail."   *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1092 (11th Cir. 2021) (citing *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1275 (11th Cir. 2015)).   The "'denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.'"   *Marrache*, 17 F.4th at 1102 (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

23

Here, Plaintiffs had ample opportunity to amend their complaint, yet failed to adequately plead an employment relationship each time.

**B.** **Dismissal on a Motion to Dismiss was Proper**

Throughout their Brief, Appellants urge this Court to reverse the dismissal orders arguing that this case should not have been determined at the motion to dismiss stage. Plaintiffs are incorrect. In the Eleventh Circuit, a totality-of-the-circumstances analysis is proper to determine whether Plaintiffs have sufficiently alleged an employment relationship at the motion to dismiss stage. *See Freeman v. Key Largo Volunteer Fire and Rescue Dep't, Inc*., 494 Fed. App'x 940, 943–44 (11th Cir. 2012) (upholding dismissal of an FLSA claim on a motion to dismiss because the plaintiff failed to adequately plead an employment relationship and determining that the plaintiff was adequately classified as a volunteer); *White v. J.A.W. Entm't, Inc*., 23-CV-21260, 2023 WL 4763746, at *2 (S.D. Fla. July 26, 2023) ("The Court may properly address the economic realities test at the motion to dismiss phase."); *Littleton v. Manheim Remarketing, Inc*., 1:17-CV-3589-TCB, 2018 WL 11454850, at *2 (N.D. Ga. Apr. 19, 2018); ("A totality-of-the-circumstances analysis is proper in the Eleventh Circuit at the motion to dismiss stage to determine whether Plaintiffs have sufficiently alleged an employment relationship."); *Blake v. Batmasian*, 191 F. Supp. 3d 1370, 1376 n. 1 (S.D. Fla. 2016) ("The economic reality test to determine

whether individual is employee within the protection of FLSA applies not only at summary judgment stage of proceedings, but also on a motion to dismiss for failure to state claim on which relief may be granted.").

Further, it is axiomatic that Plaintiffs are "the masters of their complaints" and can "choose how to plead their theory of liability." *Wiegand v. Royal Caribbean Cruises Ltd.*, 21-12506, 2023 WL 4445948, at *2 (11th Cir. July 11, 2023). Just as a plaintiff can plead their way into court, they can "plead themselves out of court by alleging facts that defeat recovery." *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005). It was Appellants' choice how to plead their FLSA claim, including which facts to allege. The volume of information they included, which grew in each successive attempt to state a claim, provided the District Court with sufficient information to properly dismiss the action.

## ARGUMENT

**I.   THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' SECOND AMENDED BECAUSE PLAINTIFFS FIT SQUARELY WITHIN THE PUBLIC EMPLOYEE VOLUNTEER EXCEPTION TO THE FAIR LABOR STANDARDS ACT, WHERE THEY APPLIED FOR A POSITION THAT WAS PLAINLY ADVERTISED AS A "VOLUNTEER" WITH THE COUNTY'S PARKS AND RECREATION DEPARTMENT, AND BECAUSE OF THEIR CIVIC SERVICE TO THE COUNTY, THEY RECEIVED "A REASONABLE, NON-COMPENSATORY, LIMITED, GOLF-RELATED BENEFIT FOR VOLUNTEERING" (DOC 64 – PG 12, ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT). (RESTATED)**

### A.   Plaintiffs' Improper Arguments

As an initial matter, in its order dismissing Plaintiffs' SAC, the District Court chided Plaintiffs for arguing that the Court was bound by non-factual, irrelevant, or unsupported allegations when ruling on the County's Motion to Dismiss, (App. 263). Plaintiffs continue to advance these improper arguments on appeal.

### i.   Referring to the County's Golf Courses as "For-Profit"

Plaintiffs refer throughout their brief to a "for-profit" golf course and continuously assert that the County's golf courses either compete with or are similar to private golf courses.    Neither are true and this Court may use "judicial experience and common sense" in reaching its determination.    It is undisputed that the golf courses in question are public golf courses.    There is no "for-profit," as the County is a governmental entity.    Even Plaintiffs are left with no choice but to admit that the County is a "public agency." (App. 167). Whether any particular

26

County-owned recreational facility at which Plaintiffs volunteered produces revenues greater than its expenses is irrelevant to the County's status as a public agency under the FLSA. The County is a public agency under the FLSA. No amount of wishing the golf courses were private will make them so.

    ii.    *Referring to Themselves as "Employees"*

Appellants continue to refer to themselves on appeal as they did in their SAC, as "employees." Whether Plaintiffs are volunteers or employees under the FLSA and FMWA, is a question of law - not a fact. *Brown*, 755 F. 3d at 160 ("whether an individual is a public service volunteer within the meaning of the FLSA is ultimately a question of law") (*citing cases*); *Todaro*, 40 F. Supp. 2d at 228-29 (the issue of whether an individual should be classified as a volunteer or as an employee has been held to be a question of law for the determination of the court). Alleging that Plaintiffs were "employees" does not make them so, and the District Court correctly ignored Plaintiffs' legal conclusions when it dismissed the SAC.

    iii.    *Referring to Discounted Rates of Golf as In-Kind Compensation*

Appellants continue to refer to themselves as having received "in-kind compensation." Again, the question of whether discounted rounds of golf constitutes "in-kind compensation" is a question of law – not a fact. Appellants, attempt to convert the ultimate legal question of their FLSA status into a question of

fact by labeling the discounted golf rounds as "compensation." However, their "[m]ere 'labels and conclusions' are not accepted as true." *Freeman v. Fine*, 820 F. App'x 836, 838 (11th Cir. 2020) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiffs' cited cases arguing that compensation is a question of fact — *Pietras v. Board of Fire Commissioners*, 180 F. 3d 468, 473 (2d Cir. 1999); *Haavistola v. Community Fire Co. of Rising Sun*, 6 F. 3d 211, 221-22 (4th Cir. 1993); and P*rice v. Grasonville Volunteer Fire Dept.*, CIV.A. ELH-14-1989, 2014 WL 7409891, at *1 (D. Md. Dec. 30, 2014) — are not FLSA cases, they are Title VII cases under the Civil Rights Act. (Appellants' Brief at 49-50). This Court should decline Plaintiffs' invitation to interpret the FLSA employee-employer relationship based on Title VII definitions and case law.

### iv. Implying that a Limitation Exists on Types of Volunteer Services

Appellants argue: "Congress intended the public service volunteer exception to the Fair Labor Standards Act to apply to volunteer firefighters, people who help the infirm in public hospitals, public school coaches, and other civic-minded individuals who provide humanitarian or charitable acts without any promise of compensation." (Appellants' Brief at 13). Appellants' suggestion that there is a limit or restriction to the type of service that a public agency volunteer may render

to a public agency lacks merit for two reasons. First, this argument is expressly contradicted by the implementing regulations themselves, which expressly provide: "*There are no limitations or restrictions imposed by the FLSA on the types of services which private individuals may volunteer to perform for public agencies*." 29 C.F.R. § 533.104(a) (emphasis supplied).

Second, this erroneous argument improperly inserts an element of subjective intent into the analysis, (*i.e.*, was the individual motivated solely by a "civic" purpose in providing services to the public agency). The FLSA and implementing require an objective examination of the totality of the circumstances, applied in a common-sense manner. *Purdham*, 637 F.3d at 428 ("The regulatory definition of volunteer should be applied in a common-sense manner, which takes into account the totality of the circumstances surrounding the relationship between the individual providing services and the entity for which the services are provided."). As the Eleventh Circuit recently held, volunteers "under § 553.101(a) need only be motivated *in part* by 'civic, charitable, or humanitarian purposes.'" *McKay v. Miami-Dade Cnty.*, 36 F.4th 1128, 1138 (11th Cir. 2022) (emphasis added).

     *v.*   *Incorrectly Asserting "Unlimited Golf" Was Promised to the Volunteers*

Plaintiffs repeatedly state that the discounted rounds of golf were "unlimited." This general conclusory statement is contradicted by the facts alleged both within the SAC and the attachments to the SAC, which make it clear that discounted rounds of golf were available only at designated times and subject to certain days, times, and locations; thus, **neither unlimited nor guaranteed**. (App. 35; 170; 171).

Appellants cannot pick and choose among their allegations in this manner. They cannot rely on the allegation of "unlimited" rounds of golf while simultaneously ignoring their more specific allegation that those rounds were in fact limited. Such contradictory allegations need not be accepted as true in the first place. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations."); *Whittington v. United States*, 867 F. Supp. 2d 102, 107 (D.D.C. 2012) ("Therefore, plaintiff's factual allegations directly contradict the claims in these counts. Accordingly, this Court does not need to accept as true the allegations in these counts and will dismiss those counts for failure to state a claim.").

### B.    <u>Purposes Underlying the FLSA Support Affirmance</u>

Any examination of the FLSA must be conducted within the framework of the protections that the Act was meant to provide. Plaintiffs' arguments fail to

recognize the importance of this historical starting point. The purposes underlying

enactment of the FLSA and the 1985 amendment creating a public agency volunteer

exception, demonstrate that Plaintiffs' claims do not implicate those purposes.

### i. *Purposes for Enacting the FLSA*

In 1976, the Fifth Circuit recognized that the FLSA, as a matter of "social

legislation" extends protections to those "who as a matter of economic reality, are

dependent upon the business to which they render service." *Usery,* 527 F.2d at

1311–12. The Court noted the "all-pervasive determinant economic dependence" is

the cornerstone of an analysis regarding who is protected by the FLSA:

> The common law concepts of 'employee' and 'independent contractor'
> have been specifically rejected as determinants of who is protected by
> the Act. The test is not one which allows for a simple resolution of close
> cases. However, the lesson taught by the Supreme Court's 1947
> trilogy is that any formalistic or simplistic approach to who receives the
> protection of this type legislation must be rejected. In *Bartels v.
> Birmingham*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947), the
> Court held that 'in the application of social legislation employees are
> those who as a matter of economic reality are dependent upon the
> business to which they render service.'

*Usery,* 527 F.2d at 1311–12 (footnotes omitted).

This Court reiterated these underlying purposes in *Schumann v. Collier*

*Anesthesia, P.A.*, 803 F.3d 1199 (11th Cir. 2015), a case brought by trainees who

were trained by a private employer:

> Congress enacted the FLSA "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 902 n. 18, 89 L.Ed. 1296 (1945). In addition, Congress sought "to lessen, so far as seemed then practicable, the distribution in commerce of goods produced under subnormal labor conditions." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727, 67 S.Ct. 1473, 1475, 91 L.Ed. 1772 (1947).

*Schumann*, 803 F.3d at 1207.

This Court quoted *Walling v. Portland Terminal Co.*, 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947) for the proposition that "the FLSA was 'not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another.'" *Schumann*, 803 F.3d at 1208, (quoting *Portland Terminal*, 330 U.S. at 152).

Plaintiffs' arguments lose sight of the underlying purposes for enactment of the FLSA, and their attempts to shoehorn themselves into the classification of someone who is "dependent upon the business to which they render service(s)" are unreasonable, at best, and frivolous, at worst. Plaintiffs have not alleged a real, economic dependence on the public agency for which they accepted a volunteer position.

The District Court's decision properly analyzed the economic reality of Plaintiffs volunteering, where Plaintiffs allege only that if they did not provide

services to the County at its golf course, they would have paid more to enjoy a hobby. The allegations of Plaintiffs' SAC did not allege an economic dependence by Plaintiffs on the County, much less any reason to be discussing these circumstances within the context of the FLSA, nor could it, which is fatal to Plaintiffs' claims.

Assuming, *arguendo*, that discounted rounds of golf may be linked economically to Plaintiffs' sustenance, which is absurd given that Plaintiffs had no way of monetizing the reasonable benefit offered to them, Plaintiffs have not alleged they were dependent on these discounts. All that is alleged is that Plaintiff Adams saved on average $78.36 per month in golf fees, Plaintiff Shaw saved on average $559.00 per month in golf fees, and Plaintiff Kasmere saved on average $210.85 per month in golf fees. As the District Court noted, the reduced golf fee benefit was not alleged to have a value beyond these savings to Plaintiffs. It was not alleged that this benefit could be transferred to a third party or that it cost the County anything to provide this benefit.

Additionally, the amount of the value of the benefit provided by the County was, to a certain extent, within Plaintiffs' control. Plaintiffs argue that the "heavy discount" on rounds of golf that they were given by the County should result in a

finding that these savings were compensation.[3]   Taking Plaintiffs' argument to its logical conclusion, the determination of whether an individual who accepted a volunteer position with the County is an employee or a volunteer would be dependent on that individual's availability to play golf at the certain times, days, and locations discounted golf was made available, their physical stamina, and golf abilities.   That standard is unworkable and would discourage volunteerism.

Plaintiffs failed to allege facts establishing that the totality of the circumstances surrounding the relationship between themselves and the County, when viewed in an objective, common-sense manner, entitled them to be classified as employees under the FLSA.   Rather, the FLSA was not meant to extend protections to Plaintiffs.   The District Court was correct to grant the County's Motion to Dismiss with prejudice.

## ii.   *Purposes for Enacting the Public Agency Volunteer Exception*

Further, Plaintiffs' arguments ignore the stated purposes for the 1985 enactment of the public agency volunteer exception.   Pursuant to the legislative history of the FLSA's1985 amendments, the public agency volunteer exception was

---

[3] The County has already addressed how Plaintiffs' interpretation of compensation renders the term benefit in 29 U.S.C. § 203(e)(4)(A) insignificant and/or superfluous in Argument I, Section D(i) below, and incorporates that argument herein.

"added to the FLSA to make clear that persons performing volunteer services for state and local governments should not be regarded as 'employees' under the statute." S. REP. 99-159, 14, 1985 U.S.C.C.A.N. 651, 662. Thus, the public agency volunteer exception "provides that an individual who performs services on a volunteer basis for a state or local government shall not be deemed an employee for FLSA basis: even if the individual receives expenses, a nominal fee, or reasonable benefits to perform the services." *Id*.

Notably, the "evil" Congress sought to prevent by extending the FLSA to the states and state agencies was "any manipulation or abuse of minimum wage requirements through coercion or undue pressure upon employees to 'volunteer.'" *Id*. Thus, the committee provided an example of a nurse employed by a state hospital not being able to volunteer nursing services at a state operated clinic. *Id*.

Here, Plaintiffs were never employees of the County in any capacity. Instead, Plaintiffs responded to ads seeking volunteers, accepted positions classified as volunteer positions, and were told volunteers received no wages. (Doc. 54 generally). Thus, Plaintiffs have not and cannot plead that they were in any way coerced or unduly pressured to become volunteers. Simply, put, Plaintiffs sought out the County, took the initiative to apply to volunteer for the County, accepted the

volunteer positions, and now are the ones attempting to coerce the County into classifying them as employees.

## C. The FLSA and DOL's Implementing Regulations Defining Volunteers

Reaching the question of whether the 1985 public agency volunteer exception of the FLSA and the rules promulgated thereunder were properly applied below, the County contends they were, and offers the following analysis. To begin the analysis it is worth noting that the Supreme Court has departed from the idea that exceptions under the FLSA must be narrowly construed and has instead instructed courts that the statutory text should be given "a fair reading." *Encino Motorcars, LLC v. Navarro*, 200 L. Ed. 2d 433 (2018); *McKay*, 36 F.4th at 1133.

The protections of the FLSA extend only to individuals "falling within the Act's definition of 'employee'." 29 U.S.C. § 206(a). The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Whether an individual is an employee under the FLSA is ultimately a question of law. *See McKay*, 494 F. Supp. 3d at 1248 (former intern in county's medical examiner forensic imaging preceptorship program was not an "employee" under the FLSA); *see also Brown*, 755 F. 3d at 169 (*citing cases*); *Todaro*, 40 F. Supp. 2d 226, 228-29 (D.N.J. 1999). "The protections provided by the FLSA, while broad in

scope, were not intended to sweep everyone under the minimum wage umbrella."

*See Todaro*, 40 F. Supp. 2d at 230.

An important exception from the definition of "employee" under the FLSA was codified in 1985, for individuals who volunteer at a public agency or political subdivision of the State, like the County here. The public agency volunteer exception provides:

> The term "employee" does **not** include any individual who **volunteers** to perform services for a public agency which is a State, **a political subdivision of a State**, or an interstate governmental agency, if—
>
> (i)    the individual **receives no compensation or is paid expenses, reasonable benefits, or a nominal fee** to perform the services for which the individual volunteered; and
>
> (ii)   such services are not the same type of services which the individual is employed to perform for such public agency.

29 U.S.C. § 203(e)(4)(A) (emphasis added).

The term "volunteer" is not defined in the FLSA; however, Department of Labor regulations promulgated under the FLSA define volunteer as:

> (a)    An individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered, is considered to be a volunteer during such hours. Individuals performing hours of service for such a public agency will be considered volunteers for the time so spent and not subject to sections 6, 7, and 11 of the FLSA when such hours of service are performed in accord with sections 3(e)(4) (A) and (B) of the FLSA and the guidelines in this subpart.

(b)   **Congress did not intend to discourage or impede volunteer activities undertaken for civic, charitable, or humanitarian purposes, but expressed its wish to prevent any manipulation or abuse of minimum wage or overtime requirements through coercion or undue pressure upon individuals to "volunteer" their services**.

(c)   **Individuals shall be considered volunteers only where their services are offered freely and without pressure or coercion, direct or implied, from an employer.**

(d)   An individual shall not be considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.

29 C.F.R. 533.101 (emphasis supplied).

The exception for public agency volunteers is in accordance with Congress's intent that the FLSA minimum wage provisions do not discourage or impede volunteerism.   *See* 29 C.F.R. § 553.101(b).   The regulatory definition of volunteer should be applied 'in a common-sense manner, which takes into account the totality of the circumstances surrounding the relationship between the individual providing services and the entity for which the services are provided.'"   *Purdham*, 637 F.3d at 428 (quoting *Cleveland*, 388 F.3d at 528); *see also Cartaya v. United States Dep't of Agric. Forest Serv.*, 6:18-CV-02042-MC, 2022 WL 226808, at *3 (D. Or. Jan. 26, 2022).   Further, "the term 'expectation,' as used in 29 C.F.R. § 553.101(a), is properly construed to contemplate an objectively reasonable expectation of

compensation." *Brown*, 755 F. 3d at 166

Notably, the regulations specifically recognize that volunteers can be paid without losing their status as volunteers:

> (a) **Volunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers**.
> . . .

> (d) **Individuals do not lose their volunteer status if they are provided reasonable benefits by a public agency for whom they perform volunteer services.** Benefits would be considered reasonable, for example, when they involve inclusion of individual volunteers in group insurance plans (such as liability, health, life, disability, workers' compensation) or pension plans or "length of service" awards, commonly or traditionally provided to volunteers of State and local government agencies, which meet the additional test in paragraph (f) of this section.

> (e) **Individuals do not lose their volunteer status if they receive a nominal fee from a public agency**. A nominal fee is not a substitute for compensation and must not be tied to productivity. …The following factors will be among those examined in determining whether a given amount is nominal: The distance traveled and the time and effort expended by the volunteer; whether the volunteer has agreed to be available around-the-clock or only during certain specified time periods; and whether the volunteer provides services as needed or throughout the year. An individual who volunteers to provide periodic services on a year-round basis may receive a nominal monthly or annual stipend or fee without losing volunteer status.

(f)     **Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation**.

29 C.F.R. § 553.106 (emphasis added).

D.     <u>**Plaintiffs Were Properly Classified As Volunteers Under the FLSA and Implementing Regulations**</u>

i.     *Plaintiffs Were Provided a Reasonable Benefit, Not Compensation*

The District Court thoroughly analyzed the totality of the circumstances alleged by Plaintiffs in reaching its conclusion that the reduced greens fees were a reasonable, non-compensatory, limited benefit provided to Plaintiffs because of their civic service to the County and related to that service.[4]   The reduced fee benefit could not be monetized by transferring it to a third party, as the District Court concluded, rather, the benefit was for the enjoyment of the volunteer only and subject to limitations based on availability.

In an attempt to circumvent the clear implications of the public agency volunteer exception, Appellants circuitously argue that "compensation" does not just

_____

[4] Plaintiffs were allowed to play rounds of golf at reduced prices for volunteering at a public golf course, similar to volunteers who volunteer at food banks being able to receive groceries from the food banks.   29 U.S.C.A. § 203(e)(5) (2023).

mean wages and that the reduced golf fees were "in-kind compensation." They cite the definition of compensation as meaning remuneration, then cite the definition of remuneration as meaning payment, thus ending up back where they started. (Appellants' Brief at 16). There should be no dispute that the County did not "pay" the Appellants anything; it was the other way around. While a discounted round of golf may be a benefit, it is not "compensation."

If "benefit" just meant "compensation" and there was no difference between the two as Appellants imply, Congress would not have used both terms separately and distinctly within 29 U.S.C. 203(e)(4)(A)(i). Appellants' position would render Congress's use of the term "benefit" mere surplusage. When interpreting a statute, a court must give "effect, if possible, to every clause and word," rather than rendering them insignificant or superfluous. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)).

Black's Law Dictionary defines "benefit" as the "advantage or privilege something gives; the helpful or useful effect something has." *Forrest Gen. Hosp. v. Azar*, 926 F.3d 221, 229 (5th Cir. 2019). Discounted rounds of golf are a benefit given to Appellants by virtue of having volunteered at the course. It is not a payment to them, but an advantage or privilege they receive, subject to availability, over non-volunteers, who pay full price.

41

Plaintiffs' cited cases to the contrary are inapposite because are not in the context of public agencies under the public agency volunteer exception. *See e.g. Okoro v. Pyramid 4 Aegis*, 11-C-267, 2012 WL 1410025, at *1 (E.D. Wis. Apr. 23, 2012) (dealing with a private employer); *Tony & Susan Alamo Found.,* 471 U.S. at 293 (dealing with a private organization in which the "associates" were "'entirely dependent upon the Foundation for long periods of time"); *Poder in Action v. City of Phoenix*, 481 F. Supp. 3d 962, 966 (D. Ariz. 2020) (not an FLSA case); *Rhea Lana, Inc. v. United States*, 925 F.3d 521, 522 (D.C. Cir. 2019) (dealing with a for-profit private business). (Appellants' Brief at 16-18).

Courts have consistently recognized a **public agency's** ability to provide reasonable benefits to its volunteers. For example, in *Brown*, the Second Circuit found that sporadic cash payments, MetroCards, subway fares, and meals provided to plaintiff for volunteering "could only be deemed nominal" and "constituted precisely the sort of expenses coverage permitted by 29 C.F.R. § 553.106(b)." *Brown*, 755 F.3d at 159. In *Purdham*, the Fourth Circuit found that coaching stipends totaling more than four thousand dollars amounted to a nominal fee that did not convert the volunteer relationship into one of employment. *Purdham*, 637 F. 3d at 434. In *Vlad-Berindan v. NYC Metro. Transp. Auth.*, the court stated that a $5 daily MetroCard clearly qualified as an expense, reasonable benefit, or a nominal

fee "that an employer may provide to its volunteers without them becoming employees within the meaning of the FLSA." 2016 WL 1296212, at *12 (S.D.N.Y. Feb. 1, 2016), *aff'd sub nom. Vlad-Berindan v. NYC Metro. Transp. Auth.*, 779 Fed. Appx. 774 (2d Cir. 2019). In *Ramirez v. County Of Live Oak*, the court stated that compensation in the form of "a small clothing allowance, furnished equipment, and training in return for his service as a firefighter" did not render a volunteer an employee, but rather was a reasonable benefit. 2005 WL 167308, at *4 (Tex. App. Jan. 27, 2005). Notably, in *Harris v. Mecosta Cnty.*, the court found that payments of $7.50 per hour for all hours of service for volunteer firefighters were reasonable benefits not rising to the level of compensation and thus Plaintiffs were properly classified as volunteers despite the minimum wage being $4.25 an hour at that time. 1:95-CV-61, 1996 WL 343336, at *4 (W.D. Mich. Feb. 6, 1996) and 29 U.S.C.A. § 206 (a)(1) (1996).

Further, and as noted by the District Court, 29 C.F.R. § 553.106(e) contains a list of examples of "reasonable benefits," including such things as group insurance plans, such as liability, health, life, disability and workers' compensation, or pension plans or 'length of service' awards. The District Court correctly concluded that "providing someone with insurance or permitting them to participate in a pension plan is a more significant (or at least equal) benefit than a golf course providing

discounted rounds of golf." (App. 262).

Additionally, it is important to correct Appellants' argument that the benefit they received from the County for volunteering was "unlimited rounds of golf," equating to a benefit of $455 per week if a volunteer plays "five or more discounted rounds of golf" during the week. (Appellant's Brief at 19-20, 39). Referring to the discounted rounds of golf as "unlimited" is not consistent with Appellants' SAC, which expressly alleged that those rounds were limited. Specifically, they alleged that their ability to golf was "subject to certain days, times, and locations where discounted golf rounds were made available." (App. 170-71, 175-77).

Appellants' incorrectly analyze the benefit they received when they argue that the benefit had a "potential value" of $455 per week. In determining whether someone is a volunteer under FLSA, the measure is the benefits received, not the benefits that hypothetically ***could*** be received under optimal conditions not alleged to have occurred here.

For example, the benefit received by the FLSA plaintiffs in *Todaro*, was "the ability, along with regular Township police, to accept any jobs-in-blue work requested by private subscribers"—***not*** the hypothetical financial amount they could have received had they performed all such work maximally available. 40 F. Supp. 2d at 231-32 (*emphasis added*). Further, the *Todaro* Court found that the benefit

44

of jobs-in-blue work was "not in any way guaranteed or promised" to those plaintiffs, further supporting its finding that they were volunteers and not employees. *Id.* at 231-32. Likewise, the Appellants here were allowed to play discounted rounds of golf, but subject to available days, times and locations determined by the County. Like the *Todaro* plaintiffs, Appellants were not in any way guaranteed or promised a set amount of discounted golf rounds or even any rounds ***at all***, much less enough to reach the speculative $455 per week Appellants alleged.

This is in keeping with the purpose of a FLSA suit, which "is to make whole the victim of the unlawful underpayment of wages." *E.E.O.C. v. Erie Cty.*, 751 F.2d 79, 82 (2d Cir. 1984). Establishing a claim for an FLSA violation requires a plaintiff to show they "performed work for which [they] were not properly compensated." *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1190 (11th Cir. 2021). It would make little sense to determine that Appellants surpassed the volunteer exception based on benefits they did not actually receive. Doing so would defeat Congress's intent that FLSA not be construed "to discourage of impede volunteer activities," 29 C.F.R. § 553.101(b).

Plaintiffs here were given a reasonable benefit related to the type of volunteer service they performed and were never promised nor received compensation; thus, the District Court's Orders should be affirmed.

45

Appellants also erroneously argue that the test for whether a benefit falls under 29 C.F.R. § 553.106(d) is whether it is "commonly or traditionally provided" to state and local government volunteers. (Appellant's Brief at 10, 28-30.).   The District Court properly found that benefits "commonly or traditionally provided" is an example of the type of permissible benefits, not the determinative test, and that FLSA itself includes no such "commonly or traditionally provided" requirement. (Appellant's App. At Tab 64, p. 10.)   The District Court was correct because it is well-settled that a regulation cannot add to a statute. *United States v. Calamaro*, 354 U.S. 351, 358-59 (1957); *Morrill v. Jones*, 106 U.S. 466 (1883). Under FLSA's volunteer exception, the sole requirement for benefits is that they be "reasonable," not that they be "commonly or traditionally provided" to a public agency's volunteers. 29 U.S.C. § 203(e)(4)(A).

In arguing to the contrary, Appellants cite the associated-words canon of construction (which they refer to as a doctrine), but resorting to the canons is unnecessary when the language at issue is unambiguous. *Coca-Cola Bottling Co. of Ogden, Inc. v. Coca-Cola Co.*, 4 F.3d 930, 937 (10th Cir. 1993). With regard to 29 C.F.R. § 553.106, the language "group insurance plans … or pension plans or 'length of service' awards, commonly or traditionally provided to volunteers of State and

46

local government agencies," all follows the words "**for example**." 29 C.F.R. § 553.106(d) (emphasis added). A common-sense reading of the plain language yields the conclusion that "commonly or traditionally provided" describes *examples* of the type of benefits permitted under the regulation, not a limitation or requirement.

If the Department of Labor had intended to make the "commonly or traditionally provided" language a requirement rather than an example, it easily could have done so by placing it *before* the phrase "for example," or otherwise re-organizing the regulation. It chose not to do so, and Appellants cannot ask this Court to give the regulation a different meaning. *See Beeler v. Astrue*, 651 F.3d 954, 960 (8th Cir. 2011) (if four listed criteria in regulation were meant to be exclusive the "regulation would have said so"); *Legal Envtl. Assistance Found., Inc. v. Bd. of Cty. Com'rs of Brevard Cty., Fla.*, 10 F.3d 1579, 1584 (11th Cir. 1994) (if drafters of regulation had intended to limit regulation in manner argued by appellants, "they would have said so").

Assuming, *arguendo*, that there was any merit to Plaintiffs' contention that the discounted rounds of golf needed to be "commonly and traditionally" provided to volunteers, there is no question that the County does in fact provide the ability to play golf at discounted prices subject to availability to **all** golf course volunteers throughout the County.    Thus, reduced golf is a benefit commonly and traditionally

47

provided by the County for all golf course volunteers. Consequently, to the extent reasonable benefits are those "commonly and traditionally" provided, the County meets this prong and affirmance is warranted.

>    iii.   *Under the Economic Realities Test, Plaintiffs' Livelihoods Were Not Dependent Upon Non-Essential Discounted Golf Games from the County*

The ultimate focus of the economic realities test is whether Plaintiffs were dependent on the defendant. *See, e.g. U.S. Dept. of Labor v. Lauritzen*, 835 F.2d 1529, 1538 (7th Cir. 1987) ("It is dependence that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA."); *see also Freeman*, 494 Fed. Appx. at 942 (finding that Plaintiffs were properly classified as volunteers at the motion to dismiss stage and stating that "[t]he touchstone of the economic reality test is the alleged employee's economic dependence on the employer.").

It is clear from the allegations of the SAC that Plaintiffs were not dependent on the County. Plaintiffs have not alleged that they depended on the County for food, shelter, clothing, or any other living necessity; at best, they allege that the County provided them with discounted access to a non-essential recreational

activity, golf. Notably, Plaintiffs paid the County money, albeit a discounted sum, to play golf. Further, Plaintiffs did not allege "that allowing these discounted rounds precluded others (who would pay full price) from using the courses." (App. 261). There were no allegations in the complaint "to refute the logical inference that there was no material marginal cost to the County from allowing an extra round of golf to be played." (App. 261).

　　　　*iv.　Benefit Not Tied to Productivity*

　　Plaintiffs argue that because they were allowed to play golf for a reduced fee if they worked seven hours per week, the amount of their benefit was tied to productivity. As the District Court correctly concluded, this argument lacks merit. A benefit is tied to productivity not when it is offered to those who volunteer at least seven hours in a given week, but when the benefit increases with the number of hours of service that a volunteer provides.

　　Here, the number of discounted golf games Plaintiffs could take advantage of did not vary based on the number of hours Plaintiffs worked. Rather, as Plaintiffs allege, once they hit a threshold minimum of seven hours for the week, each Plaintiff could take advantage of discounted golf subject to availability. Unlike wages, the discounted golf games available to Plaintiffs here were not tied to time worked or productivity. Not only were the number of discounted golf games allegedly played

by Plaintiffs unrelated to Plaintiffs' productivity, but, moreover, any value that could be derived from the golf privileges necessarily varied based on the particular Plaintiff's personal choice of whether, and how often, to take advantage of that benefit. Accordingly, as a matter of law, the "compensation" Plaintiffs allege they received from the County – the right to personally take advantage of, but not to transfer, discounted green fees – at most is a reasonable benefit or a nominal fee that does not alter Plaintiffs' volunteer status under the FLSA.

### E. Plaintiffs' Services Improved the Lives of County Residents

Plaintiffs' suggestion that they do not improve the lives of County residents is puzzling (Appellants' Brief at pg. 26). There is no doubt that assisting people who are enjoying a sport for their physical and mental well-being at a County-operated recreational facility improves the lives of those who are being assisted.

> More time spent in parks and green spaces can help individuals fight against mental health issues like depression, anxiety and stress. Making sure that all people have access to parks and outdoor programming is a critical way to increase these positive effects on health and quality of life for your community.

National Recreation and Park Association, Parks and Improved Mental health and Quality of Life, https://www.nrpa.org/our-work/Three-Pillars/health-wellness/ParksandHealth/fact-sheets/parks-improved-mental-health-quality-

[life/#:~:text=More%20time%20spent%20in%20parks,of%20life%20for%20your%20community](life/#:~:text=More%20time%20spent%20in%20parks,of%20life%20for%20your%20community) (last visited August 1, 2023).

Further, the important role of public golf courses has been thoroughly documented as municipal golf courses "have often been a gateway into the sport, offering an affordable and relaxed setting for newcomers." *See* The Need To Save Municipal Golf Courses And Importance Of Driving Ranges, Golfshake Editor, [https://www.golfshake.com/news/view/16074/The_Need_To_Save_Municipal_Golf_Courses_And_Importance_Of_Driving_Ranges.html](https://www.golfshake.com/news/view/16074/The_Need_To_Save_Municipal_Golf_Courses_And_Importance_Of_Driving_Ranges.html) (last visited August 1, 2023). Notably, municipal golf courses are "considered as important as parks, libraries, and swimming pools." The Business of Municipal Golf, A Look At The Important Role Municipal Golf Courses Play, Doerfler, Jared, PERFECT PUTT, *available at* [https://perfectputt.substack.com/p/the-business-of-municipal-golf](https://perfectputt.substack.com/p/the-business-of-municipal-golf) ((last visited August 1, 2023).

By Plaintiffs' own admission, one of the County's golf courses is also a teaching facility, which is consistent with the ideas above that many players learn the game by playing at municipal golf courses first. (App. 172-73). Thus, Plaintiffs acknowledge, albeit indirectly, the importance of municipal golf to communities.

## F.     Taxable Income Argument Irrelevant

Lastly, Appellants argue there is some relevance to the fact that the benefit

they received as volunteers - reduced golf fees - qualifies as taxable income under the Internal Revenue Service Tax Code. The FLSA and implementing regulations do not refer to a benefit's qualification as "taxable income" as a relevant factor when applying the regulations, thus Appellants' argument lacks merit.

Moreover, the relevant regulations expressly allow for the payment of a stipend or fee:

> An individual who volunteers to provide periodic services on a year-round basis may receive *a nominal monthly or annual stipend or fee* without losing volunteer status.

29 C.F.R. §553.106(e) (emphasis supplied).

Stipends and fees qualify as taxable income. Thus, there is no merit to Appellants' attempt to place some significance on the fact that a given benefit qualifies as taxable income.

### G. Dismissal With Prejudice Was Proper Because Amendment Was Futile

Plaintiffs could not allege a set of facts that would have transformed individuals who applied to provide services as volunteers at a public agency's recreational facility into employees entitled to minimum wage under the FLSA, thus the District Court properly dismissed Plaintiffs' FLSA claims with prejudice.

**H.** **Dismissal of FMWA and Retaliation Claims Was Proper**

Given the District Court's conclusion that Plaintiffs did not qualify as employees under the FLSA, dismissal of their FMWA and FLSA Retaliation claims was proper.

## CONCLUSION

The District Court correctly dismissed Plaintiffs' SAC because Plaintiffs/Appellants fit squarely within the public agency volunteer exception to the FLSA. Because Plaintiffs were not "employees" within the FLSA, the District Court correctly dismissed Plaintiffs' claims under the FMWA and section 24, Article X of the Florida constitution. Further amendment of Plaintiffs' complaint would be futile, thus dismissal with prejudice was proper.

The County respectfully requests this Honorable Court affirm the Order Dismissing Plaintiffs' Second Amended Complaint.

Respectfully submitted,

/s/ *Anaili M. Cure*
ANAILI M. CURE,
Assistant County Attorney
Palm Beach County Attorney's Office
Florida Bar Number 119558

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the type-volume limitation of the Federal Rule of Appellate Procedure 32(a)(7). According to the Word program on which it is written, the pages of this brief contains 12,920 words and are typed using Times New Roman 14-point font.

/s/ *Anaili M. Cure*
ANAILI M. CURE
Assistant County Attorney
Counsel for Defendant/Appellee,
    Palm Beach County
Palm Beach County Attorney's Office
300 North Olive Ave., Suite 359
West Palm Beach, Florida 33401
Florida Bar Number 119558
Tel.:   (561) 355-6337
Fax.:   (561) 355-4234

# CERTIFICATE OF SERVICE

I CERTIFY that on August 4, 2023, I electronically filed the foregoing Appellee, Palm Beach County's, Answer Brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. Service will be accomplished by the CM/ECF system on all parties of record.

/s/ *Anaili M. Cure*
ANAILI M. CURE
Assistant County Attorney
Counsel for Defendant/Appellee,
 Palm Beach County
Palm Beach County Attorney's Office
300 North Olive Ave., Suite 359
West Palm Beach, Florida 33401
Florida Bar Number 119558
Tel.: (561) 355-6337
Fax.: (561) 355-4234